UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

FAIR HOUSING JUSTICE CENTER, INC., :
JANE DOE and JOHN DOE, :
                                 :       18-CV-3196 (VSB)(RWL)
                    Plaintiffs, :

           -against- :
                                   :

HOWARD A. ZUCKER, in his official capacity :
as Commissioner of the New York State :
Department of Health, THE NEW YORK STATE :
DEPARTMENT OF HEALTH, ELM YORK :
LLC, MADISON YORK ASSISTED LIVING :
COMMUNITY, LLC, MADISON YORK REGO :
PARK LLC, and VILLAGE HOUSING :
DEVELOPMENT FUND CORPORATION, :
                                   :
                  Defendants. :

-------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

Jota Borgmann, Esq. (JB-1227), of counsel to
Jeanette Zelhof, Esq.
Tanya Kessler (TK-0940)
Kevin M. Cremin (KC-4319)
MOBILIZATION FOR JUSTICE, INC.
100 William Street, 6th Floor
New York, New York 10038
(212) 417-3717
jborgmann@mfjlegal.org

Susan Ann Silverstein (SS-1234)
Iris Yohana Gonzalez, admitted *pro hac vice*
AARP FOUNDATION LITIGATION, INC.
601 E Street NW
Washington, DC 20049
(202) 434-2159
ssilverstein@aarp.org

Attorneys for Plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................... 1

LEGAL STANDARD ...................................................................... 1

COUNTERSTATEMENT OF ALLEGATIONS ................................ 3

ARGUMENT ................................................................................. 7

I.    Plaintiffs Have Alleged Injuries in Fact that are Fairly Traceable
to Defendants' Actions and May be Redressed by a Favorable
Court Decision .......................................................................... 7

    A. Article III Standing Under the FHA, ADA, RA, and ACA .................................. 7

    B. FHJC Has Standing to Seek Damages
and Injunctive Relief ............................................................. 8

        1. FHJC has standing to seek damages because it expended resources
to investigate allegedly discriminatory conduct by all Defendants,
which diverted it from other activities and frustrated its mission
of promoting fair housing ............................................... 9

        2. FHJC has standing to seek injunctive relief because its allegations of
injury are grounded in evidence of systemic wrongdoing of the type
that can be redressed through an injunction ...................... 12

        3. The emergency regulations do not defeat FHJC's standing ........................... 14

        4. State Defendants incorrectly assert that FHJC's claims are for third-
party conduct ................................................................ 15

        5. York Defendants and Village Housing cannot avoid liability for
their "open and known" discriminatory conduct ............... 16

        6. Village Housing's assertion that it "cannot be the cause of any harm
alleged" is contradicted by the allegations in the Amended Complaint .......... 16

    C. Jane Doe Has Standing for Her Claims of Discrimination Under
the FHA, ADA, RA, and ACA Against State Defendants ...................... 18

    D. John Doe Has Standing for His Claims of Discrimination
Under the FHA, ADA, RA, and ACA Against State Defendants .......... 21

E.   Plaintiffs Have Standing to Assert Claims Against State Defendants for Compensatory Damages Because the State Has Waived Sovereign Immunity Under the Rehabilitation Act and the Affordable Care Act .................. 23

II.   The State's Emergency Regulations do not Render any of Plaintiffs' Claims Moot ....................................................................................... 25

III.   Plaintiffs' Claims are Ripe for Review ...................................................... 29

IV.   Plaintiffs Adequately Plead Disability Discrimination Claims Against All Defendants ....................................................................................... 30

A.   Plaintiffs State Claims for Disability Discrimination Against ACF Defendants ...................................................................................... 30

1.   Defendants' reading of "Otherwise Qualified" would defeat the purpose of the FHA ........................................................... 33

2.   ACF Defendants' challenge to FHJC's discriminatory statement claim is unfounded ...................................................... 34

3.   Defendants wrongly assert that a showing of discriminatory animus is required to state a claim for intentional discrimination ........................... 35

4.   ACF Defendants' purported adherence to State regulations is not a ground for dismissal ................................................. 36

5.   ACF Defendants incorrectly assert that FHJC failed to assert an adequate reasonable accommodation claim ................................. 37

6.   York Defendants' First Amendment defense is meritless ........................... 39

B.   Plaintiffs State Disability Discrimination Claims against the State ...................... 39

CONCLUSION ............................................................................................. 48

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967), *overruled on other grounds,*
*Califano v. Sanders*, 430 U.S. 99 (1977) ........................................................ 29

*Amarin Pharma et al., v. U.S. Food & Drug Admin.*,
119 F. Supp. 3d 196 (S.D.N.Y. 2015) .................................................... 39 n.10

*Arlington Heights v. Metropolitan Housing Dev. Corp.*,
429 U.S. 252 (1962) ........................................................................................ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 2, 40

*ATM One, LLC v. Landaverde*,
2 N.Y.3d 472, 812 N.E.2d 298 (2004) .......................................................... 42

*Austin v. Town of Farmington*,
826 F.3d 622 (2d Cir.), *cert. denied sub nom. Town of Farmington, N.Y. v. Austin*,
137 S. Ct. 398, 196 L. Ed. 2d 297 (2016) ...................................................... 38

*Bank of America Corp. v. City of Miami*,
137 S. Ct. 1296 (2017) ................................................................................ 8, 21

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) .......................................................................... 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 2

*Boyden v. Conlin*,
No. CV 17-264, 2018 WL 4473347 (W.D. Wis. Sept. 18, 2018) .................... 25

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008) ........................................................................ 36

*Building Trades Employers' Educ. Ass'n v. McGowan*,
311 F.3d 501 (2d Cir. 2002) ........................................................................ 42

*Bultemeyer v. Fort Wayne Community Schools*,
100 F.3d 1281 (7th Cir. 1996) ...................................................................... 39

*Campbell v. Greisberger,*
80 F.3d 703 (2d Cir.1996) ................................................................. 25

*Central Hudson Gas & Elec. V. Public Serv. Comm'n,*
447 U.S. 557 (1980) ........................................................................ 39

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
868 F.3d 104 (2d Cir. 2017) ........................................................... 7, 9

*Chevron U.S.A. Inc. v. Echazabal,*
536 U.S. 73, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002) ................... 47

*Chiari v. City of League City,*
920 F.2d 311 (5th Cir. 1991) ........................................................... 47

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) .......................................................................... 12

*City of Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1982) ........................................................................ 27

*Comer v. Cisneros,*
37 F.3d 775 (2d Cir. 1994) ...................................................12, 27, 28

*Conley v. Gibson,*
355 U.S. 41 (1957) ........................................................................... 2

*Cook v. Colgate Univ.,*
992 F.2d 17 (2d Cir.1993) ............................................................... 28

*Davoll v. Webb,*
194 F.3d 1116 (10th Cir. 1999) ....................................................... 39

*Dean v. Blumenthal,*
577 F.3d 60 (2d Cir. 2009) .............................................................. 28

*Degrafinreid v. Ricks,*
417 F. Supp. 2d 403 (S.D.N.Y.), *on reconsideration,*
452 F. Supp. 2d 328 (S.D.N.Y. 2006) ............................................. 24

*Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower,*
No. 01 CIV. 5518 (MBM), 2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003) ......................... 25

*Easley by Easley v. Snider*,
36 F.3d 297 (3d Cir. 1994) ........................................................................46

*Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Berman Assocs.*,
133 F. Supp. 2d 203 (E.D.N.Y. 2001) ...............................................10, 11, ,13

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.*,
No. CV 17-4803, 2017 WL 4791185 (E.D. La. Oct. 24, 2017) ........................25

*Fair Hous. Justice Ctr., Inc. v. Allure Rehab Servs. LLC*,
No. 15 CV 6336 (RJD) (LB) 2017, WL 4297237 (E.D.N.Y. Sept. 26, 2017) .11, 12, 13, 34

*Fair Hous. Justice Ctr, Inc., et al. v. Cuomo, et al*,
No. 18-CV-3196 (VSB),  2018 WL 4565152 (Filed September 24, 2018) ................17, 36

*Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Co-op., Inc.*,
No. 10 CV 912 (RPP), 2012 WL 762323 (S.D.N.Y. Mar. 9, 2012) ..................11

*Fair Hous. Justice Ctr. v. Silver Beach Gardens Corp.*,
No. 10 Civ. 912 (RPP), 2010 WL 3341907 (S.D.N.Y. 2010) ...........................13

*Fishman by Fishman v. Daines*,
247 F. Supp. 3d 238 (E.D.N.Y. 2017) ...........................................................20

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*,
175 F.3d 144 (2d Cir. 1999) ........................................................................28

*Freydel v. N.Y. Hospital*,
No. 97 Civ. 7926(SHS), 2000 WL 10264 (S.D.N.Y. Jan. 4, 2000),
*aff'd* 242 F.3d 365 (2d Cir. 2000) ......................................................15, 20, 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................................14, 25

*Garcia v. SUNY Health Sciences Center of Brooklyn*,
280 F.3d 98 (2d Cir. 2001) ......................................................................24-25

*Gladstone Realtors v. Vill. Of Bellwood*,
 441 U.S. 91 (1979) .....................................................................................22

*Good Shepard Manor Foundation, Inc. v. City of Momence*,
323 D. 3d 557 (7th 2003) ............................................................................37

*Goonewardena v. New York*,
475 F. Supp. 2d 310 (S.D.N.Y. 2007) ...........................................................25

v

*Granite State Outdoor Advert., Inc. v. Zoning Bd. of City of Stamford*,
No. 01-7963, 2002 WL 1369857 (2d Cir. 2002) ........................................25, 26

*Hardaway v. D.C. Hous. Auth.*,
843 F.3d 973 (D.C. Cir. 2016) ...................................................................14, 27

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*,
981 F.2d 50 (2d Cir. 1992) ...................................................................27, 28, 29

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .................................................................................7, 8, 31

*Hayden v. Cty. of Nassau*,
180 F.3d 42 (2d Cir. 1999) ...............................................................................36

*HOPE, Inc. v. Eden Mgt. Et al.*, Case Nos. 13-CV-7391, 15-CV-9715, 15-CV-9717,
15-CV-9719, 2017 WL 4339824 (N.D. Ill. Sept. 29. 2017)  (N.D. Ill. 2016) ...................37

*HUD ex rel. Stover v. Gruzdaitis*,
No. 02-96-0377-8, 1998 WL 482759 (HUD ALJ Aug. 14, 1998) .....................................22

*Huertas v. East River Housing Corp.*,
674 F. Supp 440 (S.D.N.Y. 1987) .....................................................................31

*Int'l Union v. Johnson Controls, Inc.*,
499 U.S. 187 (1991) .......................................................................................36

*Irish Gay & Lesbian Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998) ...............................................................................9

*Isaacs v. Bowen*,
865 F.2d 468 (2d Cir. 1989) .............................................................................29

*Jancik v. Department of Housing and Urban Development*,
44 F.3d 553 (7th Cir. 1995) .............................................................................35

*Keitt v. New York City*,
882 F. Supp. 2d 412 (S.D.N.Y.2011) ...................................................................24

*Kifafi v. Hilton Hotels Ret. Plan*,
701 F.3d 718 (D.C. Cir. 2012) .......................................................................26, 27

*Knapp v. Nw. Univ.*,
101 F.3d 473 (7th Cir. 1996) .............................................................................47

*Kopeck v. Coughlin*,
922 F.2d 152 (2d Cir. 1991) ...................................................................................2

*Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*,
356 F.3d 365 (2d Cir. 2004) ........................................................................... 14-15

*L.C. v. LeFrak Org., Inc.*,
987 F. Supp. 2d 391 (S.D.N.Y. 2013) ...............................................................11, 31

*LeBlanc-Sternberg v. Fletcher*,
67 F.3d 412 (2d Cir. 1995) ..................................................................................... 8

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) ................................................................................. 36

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................. 7

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
91 N.Y.2d 577 (1998) .......................................................................................... 43

*Mary Jo C. v. New York State & Local Ret. Sys.*,
No. 09 CV 5635 (SJF) (ARL), 2011 WL 1748572 (E.D.N.Y. May 5, 2011),
*aff'd in part, vacated in part*, 707 F.3d 144 (2d Cir. 2013) ....................... 18, 19, 37

*Maziarz v. Hous. Auth. of the Town of Vernon*,
281 F.R.D. 71 (D. Conn. 2012) ........................................................................... 46

*Mazzocchi v. Windsor Owners Corp.*,
204 F. Supp. 3d 583 (S.D.N.Y. 2016) .................................................................. 28

*McKivitz v. Twp. of Stowe*,
769 F. Supp. 2d 803 (W.D. Pa. 2010) ................................................................... 8

*Mental Disability Law Clinic v. Hogan (In re Estate of Hasson)*,
No. 12-1581, 2013 WL 1110897 (2d Cir. Mar. 19, 2013) .........................10-11, 12

*Mirabilio v. Reg'l Sch. Dist. 16*,
761 F.3d 212 (2d Cir. 2014) ............................................................................40-41

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation*,
79 F.3d 1298 (2d Cir. 1996) ................................................................................ 29

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
*508 U.S. 656 (1993)* ........................................................................................ 14

*Nnebe v. Daus,*
644 F.3d 147 (2d Cir. 2011) .......................................................................... 10, 12

*Olmstead v. L.C. ex rel. Zimring,*
527 U.S. 581 (1999) ........................................................................................ 46

*Olsen v. Stark Homes, Inc.,*
759 F.3d 140 (2d Cir. 2014) ............................................................. 10, 11, 30, 37

*Peterec v. City of New York,*
No. 14-CV-309 RJS, 2015 WL 1027367 (S.D.N.Y. Mar. 6, 2015) ..................... 42

*Planned Parenthood Se., Inc. v. Bentley,*
141 F. Supp. 3d 1207 (M.D. Ala. 2015) .......................................................... 19

*Quadir v. New York State Dep't of Labor,*
39 F. Supp. 3d 528 (S.D.N.Y. 2014) ............................................................... 24

*Quinones v. City of Evanston, Ill.,*
58 F.3d 275 (7th Cir. 1995) ...................................................................... 17, 36

*Ragin v. Harry Macklowe Real Estate Co.,*
6 F.3d 898 (2d Cir. 1993)........................................................10,11, 13, 16, 39

Reeves v. Rose
108 F. Supp 2d 720 (E.D. Mich. 2000) ........................................................... 32

*Rodriguez v. Village of Green Realty, Inc.,*
788 F.3d 31 (2d Cir. 2015) .......................................................................... 33, 34

*Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.,*
967 F.2d 525 (11th Cir. 1992) ....................................................................... 28

*Romero v. Pataki,*
No. 04 CIV. 4294 (WHP), 2006 WL 842177 (S.D.N.Y. Mar. 31, 2006),
*aff'd,* 241 F. App'x 764 (2d Cir. 2007) ............................................................ 29

*Ross v. Albany Med. Ctr.,*
104 F.3d 351 (2d Cir. 1996) ........................................................................... 15

*Seguros Nuevo Mundo S.A. v. Trousdale,*
No. 16-998-cv, 2016 WL 6465664 (2d Cir. 2016) ............................................ 41

*Soto-Lopez v. New York City Civil Serv. Comm'n*,
840 F.2d 162 (2d Cir. 1988) ............................................................26, 27

*S&R Development Estates, LLC v. Town of Greenburgh, New York*,
No. 16-CV-8043 (CS), 2018 WL 4119188 (S.D.N.Y. 2018) ............................17

*Spann v. Colonial Village, Inc.*,
899 F.2d 24 (D.C. Cir. 1990) ............................................................9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540,  194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ............7

*Stallworth v. New York*,
No. 16-CV-03059, 2017 WL 4355897 (S.D.N.Y. July 27, 2017) ......................15

*Staron v. McDonald's Corp.*,
51 F.3d 353 (2d Cir. 1995) ............................................................ 38

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014) ............................................................2

*Taylor v. Bernanke*,
No. 13-CV-1013, 2013 WL 4811222 (S.D.N.Y. September 9, 2013) ..............15

*Thomas v. City of New York*,
143 F.3d 31 (2d Cir. 1998) ............................................................ 29-30

*Trafficante v. Metropolitan Life Ins. Co.*,
409 U.S. 209 (1972) ............................................................21

*Tsombanidis v. W. Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003) ............................................................26

*United States v. Caronia*,
703 F.3d 149 (2d Cir. 2012) ............................................................39 n.10

*United States v. Carson*,
52 F.3d 1173 (2d Cir. 1995) ............................................................12

*United States v. Space Hunters, Inc.*,
429 F.3d 416 (2nd Cir. 2005) ............................................................22, 34, 39

*Vassilatos v. Ceram Tech Int'l, Ltd.*,
No. 92 Civ. 4574 (PKL), 1993 WL 177780  (S.D.N.Y. May 19, 1993) ............2

*Vega v. Hempstead Union Free Sch.. Dist.,*
801 F.3d 72 (2d Cir. 2015) ............................................................36

*Winfield v. City of New York,*
15CV5236-LTS-DCF, 2016 WL 6208564 (S.D.N.Y. Oct. 24, 2016) ..............................8

*Wisconsin Community Services, Inc. C. City of Milwaukee,*
465 F.3d 737 (7th 2006) ............................................................37

*Zorrilla v. Carlson Restaurants Inc.,*
255 F. Supp. 3d 465 (S.D.N.Y. 2017) ............................................41

*Zuch v. Hussey,*
394 F. Supp. 1028 (E.D.Mich. 1975) ............................................32

## FEDERAL STATUTES, REGULATIONS AND GUIDANCE

Affordable Care Act

§ 1557, 42 U.S.C. § 18116 ............................................................8
§ 1557(a), 42 U.S.C. § 18116(a) ............................................24

Rehabilitation Act of 1973

§ 504, 29 U.S.C. § 794 ............................................................24, 25
§ 504(a), 29 U.S.C. § 794(a) ............................................24

Fair Housing Act

42 U.S.C. § 3602(i) ............................................................37
42 U.S.C. § 3602(i) ............................................................8, 22
42 U.S.C. § 3604(c) ............................................................33,39
42 U.S.C. § 3604(f)(1) ............................................................31
42 U.S.C. § 3604(f)(1)(a) ............................................30, 31
42 U.S.C. § 3604(f)(1)(c) ............................................................21
42 U.S.C. § 3604(f)(2) ............................................................33
42 U.S.C. § 3613(1)(A) ............................................................37
42 U.S.C. § 3613(a)(1)(A) ............................................................7
42 U.S.C. § 3613(c)(1) ............................................................21

## NEW YORK STATE STATUTES AND REGULATIONS

Social Services Law Section 461-1 ........................................................6
18 NYCRR § 487.4(b)(9) ..................................................................26
18. N.Y.C.R.R. Parts 488 .................................................................34
18 N.Y.C.R.R.Part 487 ....................................................................34
N.Y. St. Reg. Vol. XL, Issue 24 (June 13, 2018) ...............................44

**FEDERAL GUIDANCE**

Joint Statement of the Dep't of Housing and Urban Devm't and the
Dep't of Justice,"Reasonable Accommodations," 10-11, May 17, 2004,
Available at: https://www.hud.gov/sites/documents/DOC_7771.PDF ...........................38
H.R. Rep. No. 100-711, at 18 (1988), *reprinted in* 1988 U.S. Cong. Code
and Admin. News 2179 ....................................................................46

**RULES**

Federal Rules of Civil Procedure 11(b) ...................................................18, 21
Federal Rules of Civil Procedure 11(c) ...................................................18, 21
Federal Rules of Civil Procedure 12(b)(1) ...............................................1
Federal Rules of Civil Procedure 12(b)(6) ...............................................2

**REGULATIONS AND GUIDANCE**

24 C.F.R. 310 .................................................................................35
24 C.F.R. 100.202(c) .......................................................................35
24 C.F.R. 100.202(c)(3) ...................................................................35

**MISCELLANEOUS**

Robert G. Schwemm, *Discriminatory Housing Statements and 3604(c):
A New Look at the Fair Housing Act's Most Intriguing Provision*,
29 Fordham Urb. L. J. 187 (2001) ......................................................21

**PRELIMINARY STATEMENT**

Plaintiffs brought this action to address systemic discrimination against people who use wheelchairs and people with other mobility impairments in New York's adult care facilities ("ACFs") and assisted living programs ("ALPs").  This discrimination denies people access to ACFs and Medicaid-funded ALP services and steers them to more restrictive nursing homes.

The Department of Health claims that, by striking the word "chairfast" from its regulations and adding the words "reasonable accommodation," it has magically ended a widespread, state-sanctioned pattern of discrimination.  However, the Amended Complaint articulates why these cursory measures fail to remedy discrimination that is enshrined in its regulations and entrenched in its programs.  ACF Defendants continue to justify their discriminatory practices based on these regulations, flouting their obligations under federal anti-discrimination laws.

Plaintiffs allege concrete and particularized injuries that can be addressed only through injunctive relief requiring ACF Defendants to comply with federal law and the New York State Defendants to take affirmative steps to ensure nondiscriminatory application and screening procedures in ACFs, training of State and ACF staff, and changed policies and guidance, along with damages, costs, and fees.

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "allege, and ultimately prove, that [they] ha[ve] suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Baur v. Veneman*, 352 F.3d 625, 632-634 (2d Cir. 2003) (holding that enhanced risk may in some circumstances qualify as sufficient injury to confer standing).  The

1

court must take all uncontroverted facts in the complaint as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, "the Court must limit its analysis to the four corners of the complaint and must accept the plaintiffs' allegations of fact as true, together with such reasonable inferences as may be drawn in their favor." *Vassilatos v. Ceram Tech Int'l, Ltd.*, No. 92 Civ. 4574 (PKL), 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993). The allegations must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. The court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations omitted).

A court may consider evidentiary submissions outside of the pleadings in the context of a Rule 12(b)(6) motion to dismiss only if the court converts the motion to one for summary

judgment and permits the other parties an opportunity to controvert the submissions.  *Kopeck v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).

## COUNTERSTATEMENT OF ALLEGATIONS

Defendants Madison York Assisted Living LLC, Madison York Rego Park LLC, Elm York LLC (collectively, "York Defendants"), and Village Housing Development Fund Corporation ("Village Housing") each operate an ACF with an ALP.  Am. Compl. ¶¶ 20-24. ACFs and ALPs are regulated by Defendant New York State Department of Health ("the DOH"), led by Defendant Howard A. Zucker (collectively,"State Defendants").  *Id.* ¶¶ 25-26. ALPs are intended to serve people who would otherwise require placement in a nursing home. *Id.* ¶¶ 37-38.  ALPs are required to provide a broad range of medical and support services, including nursing services, physical therapy, home care and personal care services.  *Id.* ¶ 39.

For more than 5 years, Plaintiff Jane Doe has been a resident of VillageCare 46 and Ten ("VillageCare"), an ACF with an ALP operated by Village Housing.  *Id.* ¶ 18.  In April 2017, Jane Doe was hospitalized due to complications from a urinary tract infection and then transferred to a nursing home for temporary rehabilitation.  *Id.* ¶¶ 18, 98.  In June 2017, Jane Doe received a Notice of Termination of her residency based on a visual assessment by a nurse at VillageCare.  *Id.* ¶¶ 99-101.  The visual assessment stated that Jane Doe used a wheelchair and was not recommended to return to VillageCare, but could be considered for return in the future if she were able to walk and transfer.  *Id.* ¶ 102.  Shortly thereafter, VillageCare staff told Jane Doe's brother, Plaintiff John Doe, that she was not mobile enough to continue living at VillageCare.  *Id.* ¶ 104.  In June 2017, John Doe asked VillageCare staff to hold Jane Doe's apartment for her, offering to pay the rent privately.  *Id.* ¶ 106.  VillageCare immediately denied his request. *Id.*  In

3

July 2017, John Doe appealed the termination notice.  *Id.* ¶ 107.  Village Housing denied John Doe's

appeal and hold request and commenced an eviction proceeding against Jane Doe.  *Id.* ¶¶ 108, 112.

After Jane Doe filed this lawsuit, Village Housing began to claim that it was trying to evict

Jane Doe based on her incontinence, her cognitive deficits, and her inability to use stairs unassisted;

however, Jane Doe's resident records show that these conditions were present during her residency at

VillageCare before she used a wheelchair.  *Id.* ¶¶ 135-143.  At the nursing home, Jane Doe is socially

isolated and forced to sit in a wheelchair.  *Id.* ¶¶ 146-148, 160.  John Doe is concerned that his sister

is deteriorating mentally and physically.  Id. ¶¶ 148, 156.  He is distressed by the discrimination she

has experienced and its impact on her life and health.  *Id.* ¶¶ 159-160.

Over several years, Plaintiff Fair Housing Justice Center ("FHJC") received complaints

of disability discrimination from residents of ACFs, including complaints that residents were

prohibited from using wheelchairs or other mobility devices in their homes and were threatened

with institutionalization in nursing homes.  *Id*. ¶ 54.  One complaint came from John Doe.  *Id*. ¶

111.  Finding that the complaints of discrimination about ACFs fell within its mission, FHJC

assigned testers to call and visit Madison York Assisted Living, Madison York Rego Park, Elm

York, and VillageCare.  *Id.* ¶¶ 55-60.

FHJC's testing revealed that the ACFs: steer to nursing homes prospective residents who

use wheelchairs or have mobility impairments and are interested in applying to ALPs, *see id.* ¶¶

64, 69, 84; tell prospective residents and their family members that laws or regulations bar the

admission of people who use wheelchairs for emergency evacuation reasons, *see id.* ¶ 74 ("The

wheelchair thing is a fire code thing"), ¶ 83 ("[t]he fire department regulations are very clear . . . in

case of evacuation, you cannot have any wheelchairs. Walkers, canes, yes. . . . But not

wheelchairs."), ¶ 96 ("DOH regulations . . . in case of an emergency, [the residents] can all walk out,

4

and all we have to do is to direct them to where they have to go"); discriminate against people who use wheelchairs and people with other mobility impairments, *see id.* ¶ 69 ("But as long as they can show they're trying . . . [t]hat they're making an effort . . . [t]hen they're OK. But if they're just going to lay in bed all day, do absolutely nothing, then we're going to classify them as bed bound and they're not able to do this. So they would have to be transferred to a nursing home."), ¶ 73 ("We, we can't look like a hospital--We're not set up for wheelchairs."); and communicate a categorical ban on the admission to their facilities of people who use wheelchairs, *see id.* ¶ 64 ("wheelchairs are not allowed in the facility"), ¶¶ 65, 69, 73 ("[W]e don't have any wheelchairs here.").

When FHJC's testing revealed that ACF Defendants rely on state law and regulations to justify their discriminatory policies, FHJC's testers spoke with several DOH officials. *Id.* ¶¶ 172-173. FHJC testing revealed that DOH officials: encouraged ALP applicants who used wheelchairs to consider nursing homes, *id.* ¶ 176; sanction blanket prohibitions against ALP applicants who used wheelchairs, *see id.* ¶¶ 185-186, 198-199; make stigmatizing comments about people who use wheelchairs, *id.* ¶ 188 ("You don't want him to run over people in front of him with the wheelchair . . . I'm not saying he would do that on purpose"); urge applicants who use wheelchairs to look for housing outside of New York City, *see id.* ¶¶ 191, 201; and state that ACFs could deny admission to all wheelchair users, whether or not they are "chairfast," *i.e.*, unable to transfer, *id.* ¶ 200.

FHJC's testing uncovered a systemic pattern of unlawful conduct by State Defendants that supported the discriminatory policies and practices of ACF Defendants. *Id.* ¶ 172. Moreover, FHJC's testing showed that the State refuses to require the ACFs to provide reasonable accommodations to people with mobility impairments. Id. ¶¶ 175-177, 182-190, 197-

200.   FHJC's investigation of Defendants' discriminatory practices required staff time and

resources that were diverted from other FHJC activities.  *Id.* ¶¶ 15-16.

One month after Plaintiffs filed this action, State Defendants filed amendments to the

admission and retention regulations. *Id.* ¶¶ 204-205.

The term "chairfast" as used in Section 461-1 of the Social Services Law, the statute

establishing ALPs, is defined as someone who "requires the assistance of two persons, one at

either elbow, when transferring to or from a chair/sitting position" and was not intended to apply

to all people who use a wheelchair.  ¶¶ 170, 212 (citing to the Memorandum of Support of

Legislation). Nonetheless, State Defendants and ACF Defendants have interpreted and applied

the term "chairfast" to justify categorical bans on admission of people who use wheelchairs to

ACFs or severe limitations on admission to first floor rooms only, even though the facilities have

elevators.  *See id.* ¶¶ 46, 64, 69, 82, 84, 95, 186, and 200.

The State's ACF and ALP admission and retention regulations, as amended, *still*

discriminate against people who use wheelchairs and have other mobility impairments.  *See, e.g.*,

*id*. ¶¶ 209-211.  Furthermore, DOH administers its programs in a way that permits ACF and ALP

operators to discriminate against people with disabilities.  *See, e.g.*, *id*. ¶ 202.  DOH continues to

permit ACFs to deny admission to people who are unable to physically evacuate on their own.

*Id*. ¶ 216.  To the extent that Defendants' policies and practices reflect legitimate safety

concerns, including concerns about emergency preparedness, those concerns could be addressed

with less restrictive alternatives than complete rejection and exclusion based on disability.  *See*

*id*. ¶¶ 32, 203.

6

**ARGUMENT**

I.   **Plaintiffs Have Alleged Injuries in Fact that are Fairly Traceable to Defendants'
     Actions and May be Redressed by a Favorable Court Decision**

   A.  **Article III Standing Under the FHA, ADA, RA, and ACA**

   Constitutional Article III standing requires that Plaintiffs show an injury in fact that (1) is

"distinct and palpable"; (2) is fairly traceable to the challenged action of the defendant; and (3) is

likely to be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992).  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion

of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635

(2016), as revised (May 24, 2016) (citing *Lujan*, 504 U.S. at 560).

   The crux of the inquiry is whether the plaintiff has "alleged such a personal stake in the

outcome of the controversy as to warrant his invocation of federal-court jurisdiction."  *Havens*

*Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (citing *Arlington Heights v. Metropolitan*

*Housing Dev. Corp.*, 429 U.S. 252, 261 (1962)).  Where multiple parties seek the same relief, the

presence of one party with standing satisfies Article III's case-or-controversy requirement.

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109

(2d Cir. 2017).

   Plaintiffs Jane Doe, John Doe, and FHJC (collectively "Plaintiffs") have alleged injury

caused by Defendants' discriminatory conduct under the Fair Housing Act ("FHA"), Americans

with Disabilities Act ("ADA"), Rehabilitation Act ("RA"), and Affordable Care Act ("ACA").

Plaintiffs seek injunctive relief, damages, attorney's fees, and costs based on these violations.

7

The FHA's standing provision provides that an "aggrieved person" may bring a claim for housing discrimination.  42 U.S.C. § 3613(a)(1)(A).  This definition "reflects a congressional intent to confer standing broadly," *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017), and includes any person, including a corporation, who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person *will be injured* by a discriminatory housing practice *that is about to occur*."  42 U.S.C. § 3602(i) (emphasis added).  Thus, "a person who is likely to suffer such an injury need not wait until a discriminatory effect has been felt before bringing suit."  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995); *see also Winfield v. City of N.Y.*, 15CV5236-LTS-DCF.  2016 WL 6208564, at *3 (S.D.N.Y. Oct. 24, 2016) (plaintiffs had standing even though they had not applied for developments under a challenged policy because they alleged that the policy restricted their ability to compete for housing on an equal basis).

Because Plaintiffs have standing under the FHA, they also have standing under the Rehabilitation Act, Title II of the ADA, and, by analogy, Section 1557 of the ACA. *See McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 818 (W.D. Pa. 2010).

**B.  FHJC Has Standing to Seek Damages and Injunctive Relief**

The Supreme Court recently reaffirmed its holding in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) that a non-profit that spends money to combat housing discrimination has a cause of action under the FHA.  *See Bank of America Corp. v. City of Miami*, 137 S. Ct. at 690. FHJC is a non-profit with a mission of "ensuring that all people have equal access to housing opportunities in the greater New York City region by eliminating housing discrimination and creating open, accessible, and inclusive communities."  Am. Compl. ¶ 12.  It alleges that it conducts a number of activities in furtherance of that mission, including:

> a) provid[ing] information to the public and other nonprofit organizations in the New York City regional area about fair housing laws, b) provid[ing] intake counseling to individuals and organizations who are potentially facing housing discrimination, c) conduct[ing] testing and other investigations of allegations of housing discrimination, d) mak[ing] legal referrals to cooperating attorneys, e) assist[ing] with the preparation and filing of administrative housing discrimination complaints, and f) provid[ing] post-referral litigation support services.

*Id.* ¶ 13.  FHJC alleges that it "expended staff time and other resources to investigate and respond to Defendants' discriminatory practices, which diverted resources away from other FHJC activities."  *Id.* ¶ 16.  The organization further alleges that its mission was frustrated by Defendants' discriminatory practices, because they made "housing unavailable because of disability."  *Id.* ¶ 17.

### 1.   FHJC has standing to seek damages because it expended resources to investigate allegedly discriminatory conduct by all Defendants, which diverted it from other activities and frustrated its mission of promoting fair housing

FHJC seeks damages from State Defendants under the RA and ACA and damages from all ACF Defendants under the FHA, RA and ACA.  An organization suing on its own behalf may establish standing by pleading an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision."  *Irish Gay & Lesbian Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).[1]  "[O]nly a perceptible impairment of an organization's activities is necessary for there to be an injury in fact."  *See, e.g.*, *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110.  Even "scant evidence" of a cost to an organization

---

[1] An organization may also establish standing by asserting the rights of its members, sometimes referred to as "associational standing."  *Irish Lesbian & Gay Org*, 143 F.3d at 649 (different tests for associational standing and standing based on harm to the organization).  The doctrine of associational standing is not relevant here.  Contrary to assertions by the York Defendants, FHJC never alleged that it is asserting rights of its members, or even that it is a membership organization.  *See* York's Br. at 10.

may support a finding of organizational standing, so long as the stake in the proceeding is not "abstract." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011).

Organizations that promote fair housing and investigate alleged discrimination—such as FHJC—have standing to bring discrimination claims where their investigations of allegedly discriminatory conduct diverted them from other activities or frustrated their mission of promoting fair housing. *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (non-profit organization whose mission was to reduce segregation and eliminate discrimination in the local housing market had standing to sue a real estate company for discriminatory advertising because the organization had been forced to divert resources from its other activities when it investigated and attempted to remedy the allegedly discriminatory advertisements).

The Second Circuit's subsequent decisions on organizational standing apply *Ragin's* expansive approach. It held that a fair housing organization's diversion of resources from other advocacy and counseling activities to investigate and advocate on behalf of individuals alleging discrimination by defendant, conduct testing and file complaints, was a "concrete and particularized injury" that established standing to seek reimbursement. *Olsen v. Stark Homes, Inc.,* 759 F.3d 140, 158 (2d Cir. 2014); *see also Nnebe*, 644 F.3d at 157-58 (taxi-drivers' union had organizational standing to challenge license-suspension policy because it needed to allocate resources to assist members with suspension proceedings); *Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Berman Assocs*., 133 F. Supp. 2d 203, 211-12 (E.D.N.Y. 2001) (fair housing organization had standing because it diverted significant resources from its other enforcement, advocacy, and counseling activities). Diversion of resources from education and training in order to contest discriminatory practices has been held to be adequate to confer standing. *Mental*

10

*Disability Law Clinic v. Hogan (In re Estate of Hasson)*, No. 12-1581, 2013 WL 1110897, at *3-4 (2d Cir. Mar. 19, 2013).

FHJC's allegations closely parallel the facts in other Second Circuit cases where diversion of resources and frustration of mission established organizational standing. Like the organizational plaintiff in *Ragin*, FHJC's investigation required it to divert resources from its other activities, which include providing information on fair housing to the public, conducting intake, and providing legal referrals. Am. Compl. ¶¶ 13, 16, *cf. Ragin*, 6 F.3d at 904. *See also Eastern Paralyzed Veterans Assoc., Inc.*, 133 F. Supp. 2d at 211-12 (frustration of mission); *Olsen*, 759 F.3d at 158 (investigation diverted resources from other activities). FHJC has established standing to challenge discriminatory conduct in similar cases in this Circuit alleging damages due to diversion of resources. *See, e.g. Fair Hous. Justice Ctr., Inc. v. Allure Rehab Servs. LLC*, No. 15 CV 6336 (RJD) (LB), 2017 WL 4297237, at *2–3 (E.D.N.Y. Sept. 26, 2017) (even in the absence of prior complaints, FHJC's testing activities to investigate discrimination against deaf applicants by nursing homes and assisted living facilities satisfied standing requirements); *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 397 (S.D.N.Y. 2013) (Organization had standing where it had alleged that it "expended staff time and other resources to investigate and respond to Defendants' discriminatory rental practices, which diverted resources away from other activities"); *Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Co-op., Inc.*, No. 10 CV 912(RPP), 2012 WL 762323, at *5 (S.D.N.Y. Mar. 9, 2012) (FHJC had standing where its testing of discriminatory conduct "expended staff time and resources that could have been used to identify and investigate other potential instances of housing discrimination").

11

Defendants' reliance on D.C. Circuit decisions is misplaced, because those decisions do not control in the Second Circuit.  Village Housing Brief ("Vill. Hous. Br.") at 16; York Defendants' Brief ("York Br.") at 18; State Defendants' Br. ("State Br.") at 16.  Moreover, Second Circuit precedent holds that diversion of resources <u>can</u> include litigation expenses.  *See Nnebe*, 644 F.3d at 157; *Mental Disability Law Clinic, Touro Law Ctr.*, No. 12–1581, 2013 WL 1110897, at *3-4.

> **2.   FHJC has standing to seek injunctive relief because its allegations of injury are grounded in evidence of systemic wrongdoing of the type that can be redressed through an injunction**

Contrary to the assertions by State Defendants and Village Housing, FHJC has pleaded facts sufficient to establish standing to seek not only damages, but also injunctive relief.  *See* State Br. at 11-12; Vill. Hous. Br. at 15.  For a plaintiff to have standing to assert a claim for injunctive relief, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations and quotations omitted).  Where plaintiffs allege facts that demonstrate that "defendants have invaded a legally protected interest and that such injury is redressable by injunctive relief," they have standing to seek injunctive relief.  *See Comer v. Cisneros*, 37 F.3d 775, 790 (2d Cir. 1994).  In determining whether the injury can be redressed through injunctive relief, "[C]ourts are free to assume that past misconduct is 'highly suggestive of the likelihood of future violations.'"  *Allure Rehab. Servs., LLC.*, 2017 WL 4297237, at *3 ("[w]hen the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct.") (quoting *United States v. Carson*, 52 F.3d 1173, 1183-84 (2d Cir. 1995)).

12

Detailed allegations that defendants categorically refuse to provide services on a discriminatory basis suggest "systematic wrongdoing" that may be redressed by an injunction. *Id*. at *4 ("An outright refusal to provide [a service], as a matter of policy, demonstrates an unwillingness to engage with the needs of [people with disabilities] and therefore violates the [Rehabilitation Act]."); *Fair Hous. Justice Ctr. v. Silver Beach Gardens Corp*., No. 10 Civ. 912(RPP), 2010 WL 3341907 at *8 (S.D.N.Y. 2010) (holding that fair housing organization had standing to seek compensatory and injunctive relief even though testers never actually applied for housing); *see Eastern Paralyzed Veterans Ass'n, Inc.*, 133 F. Supp. 2d at 212. In *Silver Beach Gardens*, the Court held that an injunction would prevent defendants from using a rule that required applicants to furnish references from current residents and would redress the source of FHJC's injury. 2010 WL 3341907, at *8.

In this case, FHJC's injury is grounded in allegations of systemic wrongdoing. FHJC alleges that it responded to complaints of discrimination from residents of ACF Defendants' facilities by conducting testing investigations that involved contacting each Defendant on multiple occasions. Am. Compl. ¶¶ 54, 61-87 (testing of York Defendants' facilities), ¶¶ 88-97 (testing of VillageCare 46 and 10), ¶¶ 173-203 (testing of State Defendants). Through its investigations, FHJC found that all ACF Defendants had discriminatory policies that denied housing to people who use wheelchairs. *Id.* ¶¶ 64, 69, 73, 82, 84, 87-88, 92, 95 (testing of each ACF Defendant indicating "no wheelchairs" was a policy and practice). These findings point to systemic wrongdoing like that of the defendant in *Allure Rehab. Servs., LLC.*, 2017 WL 4297237, at *3. Like the plaintiff organizations in *Silver Beach Gardens* and *Ragin*, FHJC seeks to enjoin systemic discriminatory conduct and ensure that it does not recur in the future, which, together with compensatory damages, would redress the injury it suffered.

13

3.      The emergency regulations do not defeat FHJC's standing

Even though the State amended its regulations, FHJC has standing because: (1) the State amended its regulations after (and because) FHJC filed this lawsuit; (2) the State's regulations as amended still permit ACFs to discriminate; (3) assuming for the sake of argument that the new regulations "cured" the potential for discrimination, they do not address past injuries; and (4) Defendants' own arguments offer few assurances or procedural safeguards to eliminate the risk of future violations.  *See* State Br. at 11-12; Vill. Hous. Br. at 14-15; York Br. at 14-15.

Defendants' arguments conflate mootness and standing.[2]  The standing analysis centers on whether a plaintiff alleged cognizable injury "at the outset of the litigation."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *see also Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 978–79 (D.C. Cir. 2016) (elucidating the difference between mootness and standing, and noting that unlike standing, mootness concerns events subsequent to the filing of the complaint).  Any change in regulation or law subsequent to the initiation of a case has no bearing where such change fails to cure the fundamental problem in the challenged regulation or law.  *See Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993); *Lamar Advert. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 378 (2d Cir. 2004) ("a plaintiff's claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset.").  The Court in *Lamar* noted that the proper course of action for the plaintiff was to amend the complaint to allege that the amended ordinance was unlawful.  *Lamar Advert. of Penn, LLC*, 356 F.3d at 378.  Plaintiffs did just that here. Am. Compl. ¶ 204-19 (alleging that the DOH's emergency regulations "effectively bar people who

---

[2] Defendants' mootness arguments are addressed in Part II, below.

14

rely on wheelchairs for mobility and people with other mobility impairments" in violation of federal law).

The cases on which State Defendants rely are inapposite.  In *Stallworth v. New York*, the directive the plaintiff sought to challenge was withdrawn before suit was filed.  No. 16-CV-03059 (PAE) (BCM), 2017 WL 4355897, at *10-11 (S.D.N.Y. July 27, 2017).  Similarly, in *Ross v. Albany Med. Ctr.*, the bill that overcharged the plaintiff was withdrawn by the defendant; and, never having paid that bill, plaintiff had no cognizable injury.  104 F.3d 351 (2d Cir. 1996).  In *Freydel v. N.Y. Hospital*, the hospital had amended its policy "in ways which make a recurrence of this alleged violation of her rights even more unlikely."  No. 97 CIV. 7926(SHS), 2000 WL 10264, at *3-4 (S.D.N.Y. Jan. 4, 2000), *aff'd*, 242 F.3d 365 (2d Cir. 2000).

Moreover, FHJC is not simply asserting a facial challenge to the regulations, it seeks to address Defendants' discriminatory policies and practices.  Importantly, all Defendants acknowledge that they will still enforce or comply with the existing regulations that Plaintiffs allege are discriminatory.  *See* State Br. at 22-23; Vill. Hous. Br. at 15, York Br. at 15.

### 4. State Defendants incorrectly assert that FHJC's claims are for third-party conduct

State Defendants cite *Taylor v. Bernanke* to assert that FHJC seeks injunctive relief against them "on the basis of third party conduct."  State Defendants' Br. at 13. *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *9 (S.D.N.Y. September 9, 2013).  FHJC's allegations are readily distinguishable from those of the bank depositor plaintiffs in *Taylor*, who claimed that their bank deposits were at risk due to a delay in federal rule-making on proprietary trading, but made no allegations that defendants' conduct compelled them to divert their resources.  *See* Am. Compl. ¶¶ 12-17, 173-203; *Taylor*, 2013 WL 481122, at *9.  Plaintiffs have

alleged that State Defendants have violated federal anti-discrimination law.  FHJC has standing to remedy those violations.

### 5.  York Defendants and Village Housing cannot avoid liability for their "open and known" discriminatory conduct

York Defendants and Village Housing challenge FHJC's standing on the basis that testing was not necessary because ACF Defendants' policies were "out in the open and known" to FHJC.  *See* Vill. Hous. Br. at 13; York Br. at 12-13.  To the contrary, in *Ragin*, the Second Circuit found no impediment to standing where a fair housing organization spent resources investigating defendants' published advertisements.  6 F.3d at 902.  Those allegedly discriminatory advertisements were not covert, as they were accessible to any member of the newspaper-reading public.  Defendants cite no authority for the proposition that only hidden discriminatory practices merit investigation because there is no such authority.

### 6.  Village Housing's assertion that it "cannot be the cause of any harm alleged" is contradicted by the allegations in the Amended Complaint

Defendant Village Housing claims that it was merely complying with the State's regulations barring the admission of chairfast individuals and thus did not harm FHJC.  Vill. Hous. Br. at 14-15.  The testing evidence detailed in the Amended Complaint stands in stark contrast.

The Amended Complaint describes the provisions of the DOH regulations on admission and retention of chairfast individuals, prior to the emergency rules.  The DOH regulations prohibited: Enriched Housing operators from accepting or retaining "any person who . . . is chronically chairfast and unable transfer," ALP operators from accepting or retaining "any person who . . . is chronically chairfast and requires lifting equipment to transfer or the assistance of two persons to transfer," and adult care facilities from accepting or retaining "any person who

16

. . . is chronically chairfast and unable to transfer, or chronically requires the physical assistance of another person to transfer. . . . " Am. Compl. ¶¶ 162-64.  An admissions coordinator employed by Village Housing repeatedly told FHJC testers that they would not accept anyone in a wheelchair, under any circumstances.  *Id.* ¶¶ 88, 94, 95 (for instance, regardless of ability to transfer independently).  *See also Fair Hous. Justice Ctr., Inc., et al. v. Cuomo, et al*, 18-CV-3196 (VSB), 2018 WL 4565152 (Filed Sept. 24, 2018) (finding that Jane Doe was likely to succeed on the merits that she had been discriminated against on the basis of her use of a wheelchair).  This prohibition went even further than the State's regulations required.  Therefore, Defendant Village Housing's assertion that it was merely hewing to the State's regulatory requirements is, at best, misleading.

Furthermore, the fact that the State regulations were in place does not exempt Village Housing from liability for discrimination.  Discriminatory state regulations are preempted by federal statutes protecting against discrimination.  "[Defendant] believes that it is compelled to follow the directive from the state, but the Supremacy Clause of the Constitution requires a different order of priority.  A discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law."  *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995); *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 161–64 (2d Cir. 2013) (noting that state statutes and state regulations are preempted by the ADA equally); *S&R Dev. Estates, LLC v. Town of Greenburgh, N.Y.*, No. 16-CV-8043 (CS), 2018 WL 4119188 (S.D.N.Y. 2018) (FHA preempts a state law that would make access to housing more difficult for a protected class).  Village Housing's assertion that the state regulations excuse it from liability is thus unsupported by the facts and the law.

17

### C. Jane Doe Has Standing for Her Claims of Discrimination Under the FHA, ADA, RA, and ACA Against State Defendants[3]

Jane Doe has alleged injury from the State's discriminatory conduct under the FHA, ADA, RA, and ACA. She seeks injunctive relief, damages, attorney's fees, and costs based on these violations.[4] Jane Doe suffered an injury in fact when Village Housing sought to terminate her residency agreement, refused to allow her to return to her apartment, and refused to allow her to participate in its ALP based on her inability to walk and her use of a wheelchair. *See* Am. Compl. ¶¶ 99-104. All of these actions were sanctioned and, according to ACF Defendants, required by the State Defendants' regulations of ACFs and the services they are licensed to provide. As a result of this discrimination, Jane Doe has been unnecessarily institutionalized in a nursing home for more than one year seeking to return to her home. She alleges that at the nursing home, she is socially isolated and forced to sit in a wheelchair. She alleges that she is physically and mentally deteriorating and that she is losing hope. In addition, even if, today, after her long unnecessary institutionalization in a nursing home, Jane Doe were no longer eligible for the State's ACF or ALP programs, she properly alleges a violation of her right to participate in and receive the benefits of those programs when she was eligible. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, No. 09 CV 5635(SJF)(ARL), 2011 WL 1748572, at *4 (E.D.N.Y. May 5, 2011), *aff'd* in part, vacated in part, 707 F.3d 144 (2d Cir. 2013) (finding injury in fact

---

[3] In Counts II, VI, and IX, Jane Doe states disability discrimination claims against Village Housing. Village Housing has withdrawn its motion to dismiss those claims. *See* October 1, 2018 Letter from David T. Luntz to Judge Vernon S. Broderick ("withdrawing that portion of its motion to dismiss the amended complaint [Doc 133] that addresses the claims of Jane Doe and John Doe only"). As a result, this memorandum will not address Jane Doe's standing to assert claims against Village Housing. Jane Doe has *not* asserted a disability discrimination or any other claim against the York Defendants. Despite our repeated requests to the York Defendants' attorneys to withdraw the portion of their motion that questions Jane Doe's standing to assert purported claims against the York Defendants, they have refused to do so. This has needlessly increased the cost of litigation. The Court should deny the York Defendants' motion against Jane Doe as frivolous under Rule 11 and impose sanctions. FRCP 11(b) and (c).

[4] As detailed in Part I.A., *supra*, at 9, Article III standing analysis is the same under each of these statutes.

18

where State failed to provide plaintiff with her requested accommodation of a waiver of the statutory filing deadline for the States disability retirement benefit program).

Jane Doe's injuries are fairly traceable to State Defendants.  She has been subjected to discrimination that is founded on and supported by State Defendants' regulations, policies, and practices.  *See* Am. Compl. ¶¶ 4, 6-8, 252, 293.  State officials sanction categorical bans on people who use wheelchairs, despite the fact that neither the original nor amended versions of the State's regulations contained such a categorical ban.  *Id*. ¶¶ 169-171, 200, 213.  The amended regulations and their administration continue to discriminate against people with disabilities, including people who use wheelchairs.  *Id*. ¶¶ 202-203, 209-219.  Affirmative steps are required from the State to ensure meaningful relief.  *See Planned Parenthood Se., Inc. v. Bentley*, 141 F. Supp. 3d 1207, 1226–27 (M.D. Ala. 2015) (where plaintiff alleged violations of the Medicaid Act, court could order injunctive relief requiring the state to reinstate a provider agreement).

Jane Doe's claims for injunctive relief, damages, attorney's fees, and costs are likely to be redressed by a favorable judicial decision.  Even though Jane Doe will be returning home pursuant to the Court's order on preliminary injunctive relief, there is the threat of future, repeated injury as a result of State regulations, policies and practices.  Upon return, Jane Doe will be subject to the same regulations, policies and procedures that have already injured her, including the State's discriminatory admission and retention regulations and its policies and practices that give full discretion to Village Housing on whether to admit and retain residents and apply whatever criteria it chooses without review by the State.  Thus, Jane Doe still has standing to pursue her claims against State Defendants, including her claims for prospective injunctive relief.

State Defendants callously claim that Jane Doe does not have standing because she should have just given up and tried to move somewhere else. *See* State Br. at 17 ("As an initial matter, her alleged inability to leave the nursing home or return to her apartment at VillageCare *was caused by Jane and John Doe's personal choices* rather than the prior regulations.") (emphasis added). Setting aside whether it is reasonable or feasible for Jane Doe to give up her apartment, the State cannot avoid its obligation to comply with federal law prohibiting disability discrimination by suggesting that Jane Doe could live elsewhere. *See Fishman by Fishman v. Daines*, 247 F. Supp. 3d 238, 250 (E.D.N.Y. 2017) ("Whether or not plaintiffs or their legal representatives were able to seek an adjournment of plaintiffs' fair hearings does not bear on defendants' failure to provide plaintiffs with notice of default prior to deeming their Medicaid appeals abandoned. That deficiency was unlawful and 'fairly traceable' to defendants for standing purposes.").

Jane Doe's case is distinguishable from *Freydel v. New York Hosp.*, No. 97 Civ. 7926(SHS), 2000 WL 10264 (S.D.N.Y. Jan. 4, 2000), *aff'd*, 242 F.3d 365 (2d Cir. 2000), where the court held that a one-time patient of a hospital could not show that she was likely to require treatment there in the future or that she would again be denied translation services if she were to require treatment there. *Id*. at *2-3. Unlike *Freydel*, Jane Doe plans to return to VillageCare, which is her home, and to live there for the foreseeable future. Based on its interpretation of State regulations, Village Housing's current policies and practices require any VillageCare resident who wishes to use a wheelchair in the common areas of VillageCare to seek permission from a nurse on staff. Am. Compl. ¶ 222. Jane Doe's eviction case in State court could, in fact, turn on whether she meets the State's discriminatory admission and retention regulations as amended by the emergency rule.

This Court's finding of irreparable harm on Jane Doe's motion for preliminary injunction was based in part on the injury she would suffer if she did not return to her apartment and the familiar and unique environment at VillageCare.  *See* Opinion and Order dated Sept.10, 2018, 2018 WL 4565152, at \*16.

### D.  John Doe Has Standing for His Claims of Discrimination Under the FHA, ADA, RA, and ACA Against State Defendants[5]

The FHA grants standing to persons "associated with [the targeted] buyer or renter."  42 U.S.C. § 3604(f)(1)(c)  and to any "aggrieved person,"  § 3613(a)(1)(A).  Such relief can include actual and punitive damages and injunctive relief.  *Id.* § 3613(c)(1).  The statute defines an "aggrieved person" to include "any person who . . . claims to have been injured by a discriminatory housing practice." *Id.* § 3602(i).  The Supreme Court has interpreted the FHA's "aggrieved person" provision to allow for suits by persons who were not the target of discrimination themselves, but who were nonetheless injured by the discrimination.  *See Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017) ("We have said that the definition of "aggrieved person" in the original version of the FHA . . . 'showed a congressional intent to define standing as broadly as is permitted by Article III of the Constitution.'") (citation omitted); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 209, 202-12 (1972) (FHA allows suits by white tenants claiming that they were deprived benefits from interracial associations when

---

[5] In Counts II, VI, and IX, John Doe states disability discrimination claims against Village Housing. Village Housing has withdrawn its motion to dismiss those claims.  *See* October 1, 2018 Letter from David T. Luntz to Judge Vernon S. Broderick ("withdrawing that portion of its motion to dismiss the amended complaint [Doc 133] that addresses the claims of Jane Doe and John Doe only").  As a result, this memorandum will not address John Doe's standing to assert claims against Village Housing.

John Doe has *not* asserted a disability discrimination or any other claim against the York Defendants. Despite our repeated requests to the York Defendants' attorneys to withdraw the portion of their motion that questions John Doe's standing to assert purported claims against the York Defendants, they have refused to do so. This has needlessly increased the cost of litigation.  The Court should deny the York Defendants' motion against John Doe as frivolous under Rule 11 and impose sanctions.  FRCP 11(b) and (c).

discriminatory rental practices kept racial minorities out of their apartment complex).  In short, anyone who is "genuinely injured by conduct that violates someone's rights" under the FHA has standing to sue "as long as the plaintiff suffers actual injury as a result of the defendant's conduct."  *Gladstone Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 103 n.9 (1979).

The Second Circuit has recognized that remedying emotional harms is one of the FHA's primary goals.  *See United States v. Space Hunters, Inc.,* 429 F.3d 416 (2nd Cir. 2005) (citing Robert G. Schwemm, *Discriminatory Housing Statements and 3604(c): A New Look at the Fair Housing Act's Most Intriguing Provision*, 29 FORDHAM URB. L. J. 187 (2001)); *see also HUD ex rel. Stover v. Gruzdaitis*, No. 02-96-0377-8, 1998 WL 482759, at *3 (HUD ALJ Aug. 14, 1998) (Section 804(c) protects the right "to inquire about the availability of housing without being subjected to racially discriminatory statements").

John Doe is both "associated" with the renter, his sister, Jane Doe, and an "aggrieved person" under the FHA.  John Doe alleges he has suffered both financial and emotional injuries that are reasonably traceable to Defendants' conduct.  As noted in Part I.B., *supra*, all of the actions taken by Village Housing that Plaintiffs allege were discriminatory, were sanctioned and, according to Village Housing, required by State Defendants' regulations of ACFs and the services they are licensed to provide.  *See* Vill. Hous. Br. at 14-15.

Village Housing's discriminatory actions include: sending Jane Doe and John Doe a notice of termination; making statements to John Doe that Jane Doe would not be allowed to move back in unless and until she could walk independently; denying John Doe's requests to hold the apartment at his personal expense while his sister improved her mobility; forcing Mrs. Doe to reapply for admission; denying Jane Doe's appeal of the decision not to readmit her; and subjecting Jane Doe to lengthy and futile assessments that served only to demoralize her.  *See*

Am. Compl. ¶¶ 103-104, 106-108, 123-130.  John Doe was subject to all of these discriminatory statements and actions because he is Jane Doe's next of kin and power of attorney and VillageCare communicated with John Doe about matters regarding Jane Doe's health, care, and tenancy.  *See, e.g.*, Am. Compl. ¶¶ 19, 103-104, 106-108.  John Doe personally received the notice of termination, personally filed the appeal, and personally received the denial of the appeal.  *See* Am. Compl. ¶¶ 103, 107-108.  The testing evidence cited in the Amended Complaint demonstrates that State Defendants sanctioned Village Housing's discriminatory conduct prohibiting wheelchairs.  *See* Am. Compl. ¶¶ 173-201, 189, 190, 200.

John Doe's alleged emotional injury was caused by having to endure his sister's grief and despondency after being told repeatedly that she would not be allowed to return to her home of five years, familiar surroundings, enjoyable activities, friends, and community.  *See, e.g.*, Am. Compl. ¶ 149.  John Doe also spent more time and money than he normally would visiting and advocating for his sister.  *See, e.g.*, Am. Compl. ¶¶ 150-151.  He alleges that he made more frequent trips from Florida to New York to provide moral support for his sister during assessments and while she lived in a segregated and unfamiliar environment.  *See id*.  John Doe also alleged his emotional distress and fear that his sister would deteriorate in the nursing home.  *See, e.g.*, Am. Compl. ¶ 156. These facts, as pleaded, are sufficient for standing under the FHA.

**E.  Plaintiffs Have Standing to Assert Claims Against State Defendants for Compensatory Damages Because the State Has Waived Sovereign Immunity Under the Rehabilitation Act and the Affordable Care Act**

State Defendants correctly state that, as to them, Plaintiffs are seeking compensatory damages under only the RA and ACA.  *See* State Br. at 8.  Nevertheless, they incorrectly go on to argue that "[n]o plaintiff, including FHJC, is likely to be able to support a claim for money damages against DOH *under the ADA* and RA."  *Id.* at 13, n. 3 (emphasis added).  Because

Plaintiffs are not seeking compensatory damages against State Defendants under the ADA, their arguments regarding sovereign immunity under the ADA are irrelevant.

State Defendants do not enjoy sovereign immunity under the RA or ACA.  "The Second Circuit, as well as all other intermediate federal courts, has held that Congress intended states' acceptance of federal funds to constitute waiver of their Eleventh Amendment immunity as to claims under the Rehabilitation Act."  *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y.), *on reconsideration*, 452 F. Supp. 2d 328 (S.D.N.Y. 2006).  State Defendants do not deny that they accept federal funding for their ALP program.  Therefore, State Defendants have waived sovereign immunity with respect to Plaintiffs' RA claims.  *See Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014); *Keitt v. New York City,* 882 F.Supp.2d 412, 425 (S.D.N.Y.2011); 29 U.S.C. § 794(a).  For the same reasons, and because the ACA explicitly incorporates the legal standards applied to the RA, State Defendants do not enjoy sovereign immunity under the ACA either.  *See* 42 U.S.C.A. § 18116(a) ("an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance").  *See also Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *18-21 (E.D. La. Oct. 24, 2017) (denying motion to dismiss on the ground of sovereign immunity because "the factual allegations in the complaint . . . stated claims for compensatory damages under § 504 [of the RA] and § 1557 [of the ACA]."); *Boyden v. Conlin*, No. CV 17-264, 2018 WL 4473347, at *44-46 (W.D. Wis. Sept. 18, 2018) (same).   Moreover, because compensatory damages are available under the RA and ACA from Defendant DOH, they are also available from Defendant Zucker, who Plaintiffs are suing in his official capacity.  *See Garcia v. SUNY*

*Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [plaintiff] is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent it shields [the state entity]"); *see also Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) ("[G]iven that CUNY does not contest that it has waived its Eleventh Amendment immunity through acceptance of federal funds, the official capacity suits against the individual defendants Raab, Escott and Chin may also proceed as their immunity to suit tracks that of CUNY").

## II.   The State's Emergency Regulations do not Render any of Plaintiffs' Claims Moot

"The voluntary cessation of allegedly illegal activities may render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Granite State Outdoor Advert., Inc. v. Zoning Bd*, No. 01–7963, 2002 WL 1369857 (2d Cir. 2002) (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir.1996)). "A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, No. 01 CIV. 5518 (MBM), 2003 WL 1751785, at *11 (S.D.N.Y. Apr. 2, 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (internal quotations omitted)).

The emergency regulations do not moot Plaintiffs' claims.  Plaintiffs allege that the regulations as amended continue to discriminate against people with disabilities.  *See Granite State Outdoor Advert., Inc.*, 2002 WL 1369857, at *2 (2d Cir. 2002) (noting that plaintiffs did not challenge the revised regulations).  In her declaration, Valerie Deetz has stated that the State

intends to make the emergency regulations permanent.  *See* Declaration of Valerie Deetz in

Support of State Defendants' Motion to Dismiss, dated September 6, 2018 ("Deetz

Declaration"), ¶ 11.  State Defendants' regulations prohibiting the admission and retention of,

among others, people who require assistance with walking and people who require assistance

using stairs, continue to function as a categorical ban. *See* Am. Compl. ¶¶ 169-171, 200, 213.

State Defendants presently argue that the former "chairfast" regulations were justified for

safety reasons:

> As discussed in State Defendants' opposition to the motion for a
> preliminary injunction, the prior regulations also did not categorically ban
> wheelchairs, nor were they discriminatory. See State Opp. at 17-21, ECF
> No. 61. Rather, the former exclusion was based both on the use of a
> wheelchair and the inability to transfer from the wheelchair, an issue of
> safety. 18 NYCRR § 487.4(b)(9). Such safety concerns are entirely
> legitimate.

State Br. at 2 n.1.  State Defendants' current belief that their prior regulations and practices were

not discriminatory indicates that there is very much a live case or controversy between State

Defendants and Plaintiffs and that Plaintiffs' claims are not moot.  *See Kifafi v. Hilton Hotels*

*Ret. Plan*, 701 F.3d 718, 725 (D.C. Cir. 2012) ("When amending the Plan in 1999, for instance,

Hilton flatly asserted its belief 'that the Plan satisfied ERISA's benefit accrual requirements even

without the amendment.'"); *see also Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574 (2d

Cir. 2003) (holding claims were not moot where Fire District's interpretation of fire code might

change again), *Soto-Lopez v. New York City Civil Serv. Commission*, 840 F.2d 162, 168 (2d Cir.

1988) (finding a danger of continued constitutional violations where defendants indicated an

intent to continue past practices and remanding to district court to consider appropriate

permanent injunctive relief); *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016)

("the Authority has failed to provide any evidence that it will refrain from revoking Angelene's

two-bedroom voucher in the future . . . courts never permit parties to deprive them of jurisdiction through a mere 'wave of [the] hand'") (citing *Kifafi*, 701 F.3d at 725).  An emergency regulation does not render a claim moot where the alleged violations are likely to be repeated, including where there could be "highly selective" discontinuance of enforcement or an announced intent to return to the conduct of the past.  *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (citing *Soto-Lopez*, 840 F.2d at 168 and *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283*,* 289 & n. 11 (1982)).

The Amended Complaint articulates not only how the amended regulations continue to discriminate against people with disabilities, but also how DOH staff has implemented discriminatory policies and practices.  *See* Am. Compl. ¶¶ 173-203.  State Defendants have failed to show that this allegedly illegal conduct has ceased.  *Cf. Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994) (other than changes to a written notification, defendants failed to show that their conduct had changed).  Plaintiffs seek prospective injunctive relief that includes not only changes to the regulations, but also affirmative steps to ensure nondiscriminatory application and screening procedures, training of State staff, and training and guidance for ACFs and ALPs.  *See id.* Prayer for Relief ¶ g.

The Second Circuit has declined to apply the mootness doctrine where there is evidence of continued violations of the law.  *Comer v. Cisneros*, 37 F.3d at 800 (plaintiffs' discrimination claims were not moot where their testimony and documents contradicted defendants' assurances of changed policies and practices).  Plaintiffs' allegations in the amended complaint reflect Village Housing's testimony during the hearing on Jane Doe's motion for preliminary injunction indicating that the emergency regulations did not stop or fundamentally change Village

Housing's discriminatory practices in admission or retention of, or reasonable accommodations for, people with disabilities who use wheelchairs.  *See* Am. Compl. ¶¶ 220-225.

Furthermore, a plaintiff who stands to recover monetary damages retains a legally cognizable interest in the outcome of the action.  *See Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d 583, 606-07 (S.D.N.Y. 2016) (citing *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993); *see also Dean v. Blumenthal*, 577 F.3d 60, 66 (2d Cir. 2009) (holding that withdrawal of the challenged policy did not render moot plaintiff's requested relief for past constitutional violations).  Plaintiffs have already suffered concrete harms because of State and ACF Defendants' discrimination. Plaintiffs are therefore entitled to compensatory damages, and this lawsuit is not moot.  This case is readily distinguishable from *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 58–61 (2d Cir. 1992) involving New York State's program that implemented federal requirements to increase minority-owned business participation in highway construction projects.  The Second Circuit upheld the district court's dismissal of the *Harrison & Burrowes* plaintiffs' claims for mootness, because the State's emergency regulation had already suspended application of the allegedly discriminatory minority enterprise goals on state-funded contracts and the requirements had not been enforced against them.  *Id.* at 61.

Here, by contrast, Plaintiffs allege that discrimination has already occurred under the federal anti-discrimination laws, which may be presumed to be irreparable injury.  *See Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999); *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525, 528 (11th Cir. 1992).

### III.     Plaintiffs' Claims are Ripe for Review

"In determining whether a challenge to a law is ripe for judicial review, a court must consider: (1) whether the issue is fit for adjudication and (2) the hardship to the plaintiff that would result from withholding review." *Romero v. Pataki*, No. 04 CIV. 4294 (WHP), 2006 WL 842177, at *6 (S.D.N.Y. Mar. 31, 2006), *aff'd*, 241 F. App'x 764 (2d Cir. 2007); *accord Motor Vehicle Mfrs. Ass'n of U.S. v. New York State Dep't of Envtl. Conservation,* 79 F.3d 1298, 1304-06 (2d Cir. 1996).  The rationale underlying the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

The fitness inquiry concerns "whether the issues sought to be adjudicated are contingent on future events or may never occur." *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989).  For the reasons articulated in Part II, above, Plaintiffs' claims are not abstract, they are founded on actual and concrete injuries that have already occurred.  Plaintiffs would therefore suffer hardship if the court declined to review their claims.

In *Thomas v. City of New York*, 143 F.3d 31 (2d Cir. 1998), the Second Circuit held that a procedural due process challenge to the Taxi and Limousine Commission's license issuance and renewal process was not ripe because none of the plaintiffs' licenses had been denied and, therefore, they had not suffered any harm to their procedural due process rights.  *Id.* at 35. However, the court found that the plaintiffs' equal protection and substantive due process claims were ripe for review, because they alleged a present hardship resulting directly from the

regulations, which required immediate compliance.  *Id.* at 36.  Here, Plaintiffs each allege that they have already sustained injuries based on the State's regulations, policies and practices, and that State Defendants' amended regulations continue to discriminate against people with disabilities, including people who use wheelchairs.

## IV.    Plaintiffs Adequately Plead Disability Discrimination Claims Against All Defendants

Plaintiffs state multiple disability discrimination claims[6] in the Amended Complaint against all Defendants based on specific allegations that Defendants' policies and practices discriminate against people who use wheelchairs. This Part will first address FHJC's allegations against ACF Defendants, and second, Plaintiffs' allegations against State Defendants.

### A.    Plaintiffs State Claims for Disability Discrimination Against ACF Defendants[7]

A plaintiff may establish a violation of  Section 3604(f)(1)(a) by showing that: (1) she is a person with a disability as defined in the FHA; (2) she sought and was qualified to rent or purchase the housing; (3) she was rejected; and (4) the housing opportunity remained available to other renters or purchasers.  *Olsen,* 759 F.3d at 152.  Fair housing testing organizations and testers can establish violations of the unlawfully denied provision of the FHA even though a formal application for the apartment in question was never made.  *See Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982). In addition, discouragement from applying for housing can itself be an act of discrimination or can, at minimum, indicate to the applicant that the effort to file a

---

[6] At least for purposes of this motion, all Defendants acknowledge that "claims for disability discrimination under the ADA, RA, FHA, and ACA are analyzed under the same standard."  State Br. at 21 n.6; *see* York's Br. at 23; Village Housing's Br. at 24.  This memorandum will focus primarily on FHA case law to explain Plaintiffs' disability discrimination claims under the FHA, ADA, RA, and ACA.

[7] Because, as set forth in footnotes 3 and 5, Village Housing has withdrawn its motion to dismiss with respect to Jane and John Doe, and Jane and John Doe have not asserted a claim against the York Defendants, this Part will focus exclusively on FHJC's claims for disability discrimination against the ACF Defendants.

formal application would be delayed to the point of being futile. *See e.g.*, *LeFrak Org., Inc.*, 987 F. Supp. 2d at 401 (upholding claim under § 3604(f)(1) based on defendant's applying "a more burdensome and delayed [rental] process" to plaintiff); *Huertas v. East River Housing Corp.*, 674 F. Supp 440, 444-51 (S.D.N.Y. 1987).

      For each test, the Amended Complaint describes the testing process, whereby testers inquired about an application to ACF Defendants' facilities on behalf of a relative, and the particular facts, including the date, the initials of the tester, the name of the person providing information at ACF Defendants' properties, and direct quotes of statements made by ACF Defendants' employees.  FHJC alleges the facts necessary to meet each of the elements of its claim that ACF Defendants violated 3604(f)(1)(a).  First, the Amended Complaint alleges that the testers were applying on behalf of persons with mobility disabilities who use wheelchairs. Am. Compl. ¶¶ 61, 63, 72, 73, 80, 82, 94.  Second, FHJC's testers told ACF Defendants that they were seeking housing for their relatives with physical disabilities who were looking for services or an assisted living setting and did not provide any information or indication that they were not otherwise qualified.  *Id*. ¶¶ 62, 73. 84, 93.  All of FHJC's testers applying on behalf of a person with a mobility impairment needing to use a wheelchair were denied housing.  *Id*. ¶¶ 64, 65, 73-76, 82-84, 95.

      The Amended Complaint also alleges facts indicating direct evidence of disability discrimination:  "'we cannot accommodate a wheelchair-bound patient,'" Am. Compl. ¶ 64; "'[w]e're not set up for wheelchairs,'" *id*. ¶ 73; and "'[an applicant] has to walk for us,'" *id*. ¶ 75. *See also id*. ¶¶ 82; 83; 89 ("'[n]eeds to be…able to ambulate, no wheelchairs.'"); ¶ 95 ("'[w]e could not accept anyone in a wheelchair…under no circumstances.'"); ¶ 94 ("'must ambulate with walker/rolling walker or cane'" and "'We do not admit residents on wheelchairs.'").

Furthermore, the Amended Complaint sets forth the *sine qua none* of substantiating intentional discrimination: FHJC sent a second tester seeking placement for a non-wheelchair user to each ACF Defendant[8] with a factual script matched to the first tester with a relative who used a wheelchair. *Id*. ¶¶ 66, 77, 87, 89.  The potential applicants whose relatives did not use wheelchairs were encouraged to continue the application process. *Id.* ¶¶ 77-79, 87, 90-91. *See Reeves v. Rose,* 108 F. Supp. 2d 720, 728 (E.D. Mich. 2000); *Zuch v. Hussey*, 394 F. Supp. 1028, 1051 (E.D. Mich. 1975) (The experiences of testers have been held probative on the question of discriminatory intent).  Taken together, the alleged facts are more than sufficient to demonstrate a plausible claim that ACF Defendants have denied or otherwise made housing unavailable to individuals who use wheelchairs.

FHJC has also pleaded the necessary elements of a violation of 3604(f)(2), discrimination in terms and conditions of housing.  For instance, FHJC alleges an ACF Defendant told its testers that the facility conducted "rolling discharges" and that "residents need to be able to perform certain tasks to stay in the facility – they need to be able to walk" and that the facility determines whether residents are "making an effort."  Am. Compl. ¶ 69.  An ACF admissions coordinator indicated that all residents who were "wheelchair-bound" would "have to be transferred to a nursing home."  *Id.*  FHJC's complaint alleges that Defendant ACFs treat residents with limited mobility differently, for instance, by having them all live on one floor, together with the residents who are blind or "very slow."  Am. Compl. ¶¶ 73, 75, 82, 83, 94, 95.  Thus FHJC's pleadings set forth with particularity the manner in which ACF Defendants discriminate: in the rental of dwellings; by otherwise making housing unavailable; in the terms, conditions and provision of

---

[8] In VillageCare's case, FHJC sent the tester without the need for the wheelchair first, and followed up with a second test in which the tester stated that the proposed resident relied on a wheelchair. Am. Compl. ¶ 88-97.

services and facilities; by failing to make reasonable accommodations; and by making improper inquiries.

The plethora of statements by ACF Defendants concerning the prohibition of wheelchairs and the degree to which residents must ambulate are more than sufficient to raise a plausible claim that an *ordinary listener* would conclude that Defendants had indicated a preference, limitation or discrimination based on mobility related disabilities. *See Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 52 (2d Cir. 2015) (stating that the inquiry in a § 3604(c) case focuses on whether the "ordinary listener" would believe that the allegedly discriminatory statement indicated that the speaker considered her disabled and expressed a preference on that basis). FHJC has amply pleaded its claims against each ACF Defendant, and, as discussed in the subparts below, each of their arguments to the contrary are unavailing.

### 1. Defendants' reading of "Otherwise Qualified" would defeat the purpose of the FHA

ACF Defendants argue that FHJC does not state a claim because it is not "otherwise qualified" for the ALP. York Br. at 20-21; Vill. Hous. Br. at 19-20. This argument fails for two reasons. First, the Amended Complaint alleges that FHJC's testers were not given an opportunity to demonstrate that their relatives met any other qualifications because ACF Defendants barred them at the outset from applying for housing on the basis of their wheelchair use. *See* Am. Compl. ¶¶ 63-65, 73,-76, 82-84, 94-97. Second, the qualifications that FHJC's testers' relatives are alleged to be unable to meet are precisely the qualifications in the policy and practices that Plaintiffs challenge. *See* Vill. Hous. Br. at 21 (citing 18 N.Y. Comp. Codes R. & Regs. Part 488); York Br. at 21 (citing 18 N.Y. Comp. Codes R. & Regs. Part 487). Barring plaintiffs from bringing cases challenging alleged discriminatory policies because they could not

meet the same discriminatory criteria would defeat the purpose of the FHA.  Moreover, when a fair housing organization challenges the policies and practices of housing providers, they are not required to produce actual qualified individuals with disabilities. *See Fair Hous. Justice Ctr., Inc. v. Allure Rehab. Servs. LLC*, 2017 WL 4297237 at \*4-\*5 (E.D.N.Y. 2017).

> **2.    ACF Defendants' challenge to FHJC's discriminatory statement claim is unfounded**

ACF Defendants fundamentally misunderstand the nature of a § 3604(c) claim.  This provision of the FHA makes it unlawful to make, print, or publish any notice, statement, or advertisement, with respect to the sale or rental of a dwelling, that indicates a preference, limitation, or discrimination based on a protected class.  Its purpose is to "'protect against [the] psychic injury' caused by discriminatory statements made in connection with the housing market." *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424-25 (2d Cir. 2005) (alterations in the original).  Its two salient features are: (1) it is essentially a strict liability statute without a requirement to show intent to discriminate, *see Jancik v. Department of Housing and Urban Development,* 44 F.3d 553, 556 (7th Cir. 1995); and (2) the standard and factual determination is how an "ordinary listener" would perceive the statement – regardless of whether the individual being addressed is disabled, *see Rodriguez v. Village Green Realty*, 788 F.3d at 52.  FHJC's allegations meet this standard.

In addition, the ability to screen potential residents does not permit ACF Defendants to tell prospective applicants that wheelchairs are not allowed or to immediately and invasively ask them about their use of wheelchairs or how they ambulate.  HUD regulations specifically prohibit any inquiry into the existence, nature, or severity of an applicant's disability.  24 C.F.R. 100.202(c).  ACF Defendants claim that HUD's narrow exemption from this protection from

discrimination to permit "[i]nquiry to determine whether an applicant for a dwelling is qualified

for a priority available to persons with handicaps or to persons with a particular type

of handicap," *see* 24 C.F.R. 100.202(c)(3), permits it to make discriminatory statements about

people who use wheelchairs and who have trouble walking. *See* York Br. at 18. This provision

is intended to allow, for example, providers of housing funded for people with developmental

disabilities to ask if the applicant has a developmental disability. *See, e.g.*, 24 C.F.R. 310

(example of HUD housing for certain categories of people with disabilities). Legitimate inquiries

into an applicant's disability related to a facility's ability to meet an individual's care needs may

be permissible under 24 C.F.R. 100.202(c)(3) if they are made after an initial screening but

before a final admission decision is made. Here, by contrast, Plaintiffs were denied the

opportunity to have the initial screening.

### 3. Defendants wrongly assert that a showing of discriminatory animus is required to state a claim for intentional discrimination

ACF Defendants' assertion that FHJC must allege discriminatory animus in order to state

a claim for intentional discrimination is contravened by well-established law. *See* York Brief at

21-22. "The absence of a malevolent motive does not convert a facially discriminatory policy

into a neutral policy with a discriminatory effect." *Int'l Union v. Johnson Controls, Inc.*, 499

U.S. 187, 199 (1991); *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (a plaintiff does "not

need to allege discriminatory animus for her disparate treatment claim to be sufficiently

pleaded."). Defendants' reliance on *Hayden v. County of Nassau* for this argument is misplaced:

the case involved a failed equal protection challenge to an entrance exam, because the court

found that the exam "did not differentiate between applicants based on race or gender." 180 F.3d

42, 48 (2d Cir. 1999).

FHJC alleges that ACF Defendants refused to provide or refused to permit individuals to apply for housing because of their disabilities.  FHJC is not required to plead a *prima facie* case under *McDonnell Douglas* to defeat a motion to dismiss.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Plaintiffs allege that ACF Defendants took their adverse action based on disability, by alleging facts that are direct evidence of discrimination or, at the very least, give rise to a plausible inference of discrimination.  *See Littlejohn*, 795 F.3d at 307 (requiring facts "suggesting an inference of discriminatory motivation").  Such allegations are adequate; Plaintiffs need not plead discriminatory animus.  This Court has already held that Jane Doe presented sufficient evidence for a likelihood of success in proving that her admission agreement was terminated by Defendant Village Housing, "at least in part, due to its policy against wheelchairs."  *Fair Hous. Justice Ctr, Inc., et al. v. Cuomo, et al*, 2018 WL 4565152, at *38-39 (citing FHJC testing evidence, among other things).  Moreover, given that ACF Defendants' exclusion of people who use wheelchairs went well beyond the language of the relevant State regulations, the Court can conclude that their exclusion of people who used wheelchairs was based at least in part on discriminatory animus.

**4.    ACF Defendants' purported adherence to State regulations is not a ground for dismissal**

That ACF Defendants operate under a state regulatory scheme that may have contributed to the discriminatory conduct asserted by FHJC, and that FHJC also challenges, is not in any way grounds for dismissal.  *Quinones*, 58 F.3d at 277; *see also Mary Jo C.*, 707 F.3d at 161–64.  Under the FHA, aggrieved persons may bring civil actions in a timely manner to obtain appropriate relief with respect to a discriminatory housing practice.  42 U.S.C. § 3613(1)(A).

Here, FHJC seeks injunctive relief against both State and ACF Defendants in order to ensure they can obtain appropriate relief consistent with the goals of the FHA.[9]

### 5.      ACF Defendants incorrectly assert that FHJC failed to assert an adequate reasonable accommodation claim

Defendants' assertions that FHJC failed to assert a reasonable accommodation claim is also without basis.  *See* York Br. at 24-25; Vill. Hous. Br. at 24-25.  A plaintiff bringing a reasonable accommodation claim must show that: (1) the plaintiff is disabled as defined by 3602(h); (2) the defendant knew or reasonably should have been expected to know of the disability; (3) accommodation was likely necessary to afford the person with the disability an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the requested accommodation.  *Olsen,* 759 F3d at156. FHJC does not need to show that the defendants' behavior was motivated by intentional discrimination because failure to reasonably accommodate is an alternative theory of liability "separate from intentional discrimination." *Good Shepard Manor Foundation, Inc. v. City of Momence*, 323 F.3d 3d 557, 562 (7th Cir. 2003); *Wisconsin Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th 2006) (same under the ADA).

A request for a reasonable accommodation need not be formal. *See* Joint Statement of the Dep't of Housing and Urban Devm't and the Dep't of Justice, "Reasonable Accommodations," 10-11, May 17, 2004, available at:

https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

---

[9] In *HOPE, Inc. v. Eden Mgt. et al*, individuals and a fair housing enforcement agency sued the Illinois Department of Health and other state agencies, as well as individual supported living facilities for seniors and people with physical disabilities.  Plaintiffs alleged that the state defendants had both a regulatory scheme for barring individuals with mental illness from the supported housing program and that the individual supported living facilities had a blanket ban on those with any mental health diagnosis.  *See H.O.P.E., Inc. v. Eden Management, LLC*, Case Nos. 13-CV-7391, 15-CV-9715, 15-CV-9717, 15-CV-9719, 2017 WL 4339824 (N.D. Ill. Sept. 29. 2017) (cases subsequently settled).

Housing providers should engage in an interactive process to determine what accommodation would be effective under the circumstances.  *See id*. at 7-8.

Whether an accommodation is required is "highly fact-specific" and requires a "case-by-case determination."  *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) (ADA and RA claims).  The need to consider multiple factors and balance them to determine whether an accommodation is reasonable requires an evidentiary record and, therefore, denial of a motion to dismiss.  *Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016) (FHA claim), *cert. denied sub nom. Town of Farmington, N.Y. v. Austin*, 137 S. Ct. 398 (2016).

Here, the Amended Complaint describes how each FHJC tester made clear that their family member had a mobility-related disability requiring the use of a wheelchair and wished to live in, apply, or seek placement in that particular ACF.  Am. Compl. ¶¶ 63, 72-73, 82, 95.  Each of the ACF facilities immediately stated that it would not admit persons with those disabilities, based on a rule, policy, or practice.  *Id.* ¶¶ 64, 73-75, 82-83, 95.  Each facility made clear that people in wheelchairs would not be accepted under any circumstances.

In the alternative, to the extent that testers did not formally request an accommodation, they did not because they believed that doing so would be futile.  *See, e.g. Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (plaintiff was excused from asking for reasonable accommodation because "he may have believed it was futile to ask" after being told "he would not receive any more special treatment"); *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999) (job applicant's failure to inquire about the possibility of reassignment as a reasonable accommodation was a "logical result" of the employer's set policy against reassignment).

38

### 6.      York Defendants' First Amendment defense is meritless

York Defendants' assertion that statements they made during the course of FHJC's investigation are protected by the First Amendment lacks legal support.  York Br. at 24-25.  The First Amendment does not protect "commercial speech related to illegal activity."  *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-63 (1980).  Speech that has been found to not be protected by the First Amendment includes statements that indicate racial preferences in housing, *Ragin v. New York Times Co.*, 923 F.2d 995, 1003 (2d Cir. 1991), and other allegedly discriminatory commercial speech, including a ban on accepting relay calls for potential deaf applicants. *United States v. Space Hunters, Inc.*, 429 F.3d 416, 425 (2d Cir. 2005) ("Courts have consistently found that commercial speech that violates section 804(c) [of the FHA] is not protected by the First Amendment.").[10]  The allegedly discriminatory statements by York Defendants are precisely the kind of commercial speech that has been found to violate the FHA.

### B.      Plaintiffs State Disability Discrimination Claims against the State

In Counts III, IV, VII, and X of the Amended Complaint, Plaintiffs state claims for disability discrimination against State Defendants.  State Defendants argue that "the Amended Complaint does not plausibly allege that the amended regulations violate the ADA, the RA, the FHA, or the ACA."  State Br. at 20.  State Defendants' argument focuses on whether Plaintiffs "plead [] a violation by the State Defendants."  *Id*. at 21.  State Defendants do not deny that Plaintiffs have adequately alleged the other necessary elements of a disability discrimination claim, including that they have a disability, they were qualified for the relevant benefit, and that State Defendants receive federal financial assistance.  *See id.* at 20-21. Instead, the State focuses

---

[10] The cases that the York Defendants cite on "truthful, non-misleading statements" are inapposite: they involve claims related to pharmaceutical labeling, not FHA claims.  *See Amarin Pharma et al., v. U.S. Food & Drug Admin.*, 119 F. Supp. 3d 196 (S.D.N.Y. 2015); *United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012).

only on whether the Amended Complaint plausibly alleges discrimination against individuals who use wheelchairs, *see id.* at 21-23, and discrimination against individuals with other mobility impairments. *See id.* at 23-25.  This subpart will address those arguments in turn.

Plaintiffs have adequately alleged that the amended regulations discriminate against people who use wheelchairs.  *See, e.g.*, Am. Compl. ¶¶ 6, 51, 202.  State Defendants assert that Plaintiffs' allegations are inconsistent with the "plain language of the amended regulations." State Br. at 21.  This is false.  The amended regulations are, at best, an inadequate, belated attempt to try to fix a blanket policy of discrimination.  As described below, the regulations still discriminate against people who use wheelchairs.

State Defendants cite a number of cases in support of the proposition that "the Court is not required to accept as true Plaintiffs' bare allegations that the language of the amended regulations continue to discriminate against individuals in wheelchairs."  State Br. at 21.  *Iqbal* stands for the proposition that "legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs have supported the legal conclusion that the amended regulations are discriminatory with a number of factual allegations.  *See, e.g.*, Am. Compl. ¶¶ 6, 51, and 202.

The cases cited by State Defendants in support of its argument that the Court should not credit Plaintiffs' allegations about the amended regulations are easily distinguishable.  In *Mirabilio*, the Second Circuit affirmed the dismissal of a teacher who claimed that her right to due process under the Fourteenth Amendment and state law were violated.  *Mirabilio v. Reg'l Sch. Dist. 16*, 761 F.3d 212, 215 (2d Cir. 2014).  The district court dismissed the case because "under settled Connecticut law, (i) only a 'termination' of a teaching position triggers a right to prior notice and a hearing, and (ii) reduction of hours from full-time to half-time did not

40

constitute such a 'termination.'" *Id.* at 213. To the extent that *Mirabilio* is at all relevant, it actually supports Plaintiffs claims in this case.  As described below, the "plain text" of the emergency regulations discriminates against people with disabilities. State Defendants' arguments to the contrary are unavailing.

State Defendants also rely heavily on *Zorrilla*, a case in which the district court granted in part and denied in part a motion to dismiss "a nationwide wage-and-hour collective action, alleging violations of the Fair Labor Standards Act." *Zorrilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 468 (S.D.N.Y. 2017).  The *Zorilla* court dismissed the plaintiffs' "New Jersey tip-pooling claim" after deciding that the relevant New Jersey law "does not limit the universe of workers who may pool and split their tips, but instead limits the resulting tip credit." *Id.* at 472. Plaintiffs' federal disability discrimination claims could not be more different from the claims asserted in *Zorrilla*.

The third case State Defendants cite is equally distinguishable, involving the interpretation of a contract.  *Seguros Nuevo Mundo S.A. v. Trousdale*, 16-998-cv, 2016 WL 6465664 (2d Cir. 2016). State Defendants have therefore failed to point to even one case that is remotely similar to what they are urging the court to do in this case—dismiss a case in which Plaintiffs have properly alleged that a law or regulation violates federal anti-discrimination law.

Instead, State Defendants claim that the Court should defer to their interpretation of the regulations.  This is absurd.  A government agency cannot wish away a federal discrimination lawsuit by simply asserting that its regulations are not discriminatory.  The cases State Defendants cite are all easily distinguishable. State Defendants argue that *Building Trades Employers' Education Association*, a case involving a motion for summary judgment, stands for the proposition that courts should "defer to a state agency's interpretation of its own regulations,

41

unless the interpretation is arbitrary or capricious."  State Br. at 22.  State Defendants fail to note, however, that in the very next sentence, the Second Circuit noted that "federal courts owe no deference" to New York State's interpretation of the federal law in question, the National Labor Relations Act.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507 (2d Cir. 2002).  Similarly, in this case, the Court should not defer to State Defendants' interpretation of what federal anti-discrimination law requires.

State Defendants' reliance on *Peterec* is also misplaced.  *Peterec* involved a false arrest and imprisonment claim.  *Peterec v. City of New York*, No. 14–cv–309 (RJS), 2015 WL 1027367, at *2 (S.D.N.Y. Mar. 6, 2015).  To defeat the claim, the defendant asserted that there was probable cause for the plaintiff's arrest.  *Peterec* stands for the unremarkable proposition that, in determining whether probable cause for a local arrest existed, a federal court should consider state court rulings on "what constitutes probable cause to arrest someone under the City's open container law."  *Id*. at *2-3. The other two cases that State Defendants cite, *ATM One, LLC* and *Majewski*, are both state law cases that do not even involve federal law claims.  *See ATM One, LLC v. Landaverde*, 2 N.Y.3d 472, 474 (2004); *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 590 (1998).

Plaintiffs claim that the amended state regulations violate federal law, not state law. Federal courts decide whether states violate federal laws, and State Defendants' assertions to the contrary are self-serving and misguided. Nor are State Defendants well-placed to make determinations about whether their actions violate federal anti-discrimination laws.  Even though advocates serving on regulatory workgroups with the DOH repeatedly told the DOH that these regulations violate federal civil rights laws, State Defendants did not bother to amend their obviously discriminatory regulations until after this lawsuit was filed.  *See* Am. Compl. ¶ 167.

42

As early as 2014, advocates had alerted DOH officials and Governor Andrew Cuomo's Special

Counsel for Olmstead about concerns that ACFs used the admission and retention standards to

discriminate against people who use wheelchairs, including existing residents.  *See* Am. Compl.

¶ 168.  In the justification for the emergency regulations, State Defendants admit that their

regulations, which they did nothing about for decades, had to be changed on an emergency basis

because:

> Compliance with the requirements of the State Administrative
> Procedure Act for filing of a regulation on a non-emergency basis
> including the requirement for a period of time for public comment cannot
> be met because to do so would be detrimental to the health and general
> welfare of individuals who primarily use a wheelchair for mobility and
> who are eligible for admission to adult care facilities.
> …. Without this emergency regulation some operators will
> continue to refuse admission to otherwise eligible applicants, to the
> detriment of the health and general welfare of such individuals.

*See* Am. Compl. ¶ 206 (quoting N.Y. St. Reg. Vol. XL, Issue 24 (June 13, 2018)).

Unfortunately, the emergency regulations do not rectify the discrimination.  Plaintiffs

wish that they did.

State Defendants' claim that "the amended regulations cannot be read to

discriminate against individuals in wheelchairs."  State Br. at 22.  This is disingenuous at

best.  Plaintiffs have clearly alleged that, despite the emergency regulations:

> [T]he DOH maintains within its regulations several other admission and
> retention standards that effectively bar people who rely on wheelchairs for
> mobility and people with other mobility impairments.  These include the
> provisions quoted in paragraphs 162-64 herein, barring admission and
> retention of people who are chronically bedfast; who chronically require
> the physical assistance of another person to transfer; who chronically
> require the physical assistance of another person in order to walk; who
> chronically require the physical assistance of another person to climb or
> descend stairs, unless assignment on a floor with ground-level egress can
> be made; and people who are dependent on medical equipment.

Am. Compl. ¶ 209.  State Defendants still bar almost all, if not all, people who use wheelchairs from admission to ACFs because they still apply to all people who, *inter alia,* "chronically require the physical assistance of another person in order to walk" or "chronically require the physical assistance of another person to climb or descend stairs."  We will need expert discovery to determine what percentage of people who use wheelchairs do <u>not</u> "chronically require the physical assistance of another person in order to walk" or "chronically require the physical assistance of another person to climb or descend stairs," but common sense tells us that the number is likely close to zero. By continuing to effectively bar people who rely on wheelchairs for mobility, State Defendants' regulations continue to violate federal laws.

Moreover, Plaintiffs' claims are not simply a facial challenge to the regulations. Plaintiffs have also alleged that State Defendants discriminate against people who use wheelchairs because State Defendants implement the regulations in a discriminatory manner. *See, e.g.*, Am. Compl. ¶ 6 ("The DOH's regulations, *policies and practices* result in a categorical ban on people who use wheelchairs from many ACFs, without an individualized assessment of their eligibility and qualification for ACF housing and services.") (emphasis added); ¶ 51 ("The ACF Defendants cite DOH regulations, *policies, and practices* as justification for their refusal to admit or retain people who use wheelchairs.") (emphasis added); ¶ 202 ("*Through its regulations, implementation, and guidance, the DOH administers* its ACF and ALP programs in a way that permits ACF and ALP operators to discriminate against people with disabilities.") (emphasis added).

State Defendants also assert that "Plaintiffs do not plausibly allege that the amended regulations, on their face, discriminate against individuals 'with other mobility impairments.'" State Br. at 23.  This is inaccurate.  Plaintiffs have alleged that the amended regulations also

discriminate against people with other mobility impairments. *See, e.g.*, Am. Compl. ¶ 161 ("The DOH has promulgated and maintained a number of regulations that state that ACFs and ALPs should not admit or retain *people with mobility impairments* and people who use wheelchairs in particular.") (emphasis added); ¶ 209 ("Nevertheless, the DOH maintains within its regulations several other admission and retention standards that effectively bar people who rely on wheelchairs for mobility *and people with other mobility impairments*. …..") (emphasis added); 211 ("By continuing to effectively bar people who rely on wheelchairs for mobility *and people with other mobility impairments*, the DOH's regulations continue to violate federal laws and directives that prohibit disability discrimination.") (emphasis added).  As described above, the regulations, even after they were amended on an emergency basis, still bar from admission to ACFs all people who "chronically require the physical assistance of another person in order to walk" or "chronically require the physical assistance of another person to climb or descend stairs."  That includes people who have a wide range of mobility impairments for which they might use walkers, canes, or other devices.  Also, as discussed above, Plaintiffs are not only making a facial challenge to the regulations, they are also alleging that State Defendants implement the regulations in a discriminatory manner.  *See, e.g.*, Am. Compl. ¶ 202 ("Through its regulations, *implementation, and guidance, the DOH administers* its ACF and ALP programs in a way that permits ACF and ALP operators to discriminate against people with disabilities.") (emphasis added).

State Defendants also claim that, "[t]o the extent the regulations make certain individuals ineligible for ACFs and AL Programs, those exclusions lawfully address safety concerns."  State Br. at 23.  Federal disability discrimination law "repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as

45

individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion   H.R. Rep. No. 100-711, at 18 (1988), *reprinted in* 1988 U.S. Cong. Code and Admin. News 2179.  Moreover, this is not an appropriate argument for a motion to dismiss; the cases State Defendants cite make it clear that this argument is more suitable for a motion for summary judgment or during trial, not a motion to dismiss.  *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 77 (2002) (reversing the 9th Circuit and thereby affirming the district court's grant of summary judgment for the employer based on its affirmative direct threat defense to Plaintiff's ADA claim); *Knapp v. Nw. Univ.*, 101 F.3d 473, 486 (7th Cir. 1996) (reversing "the district court's grant of the permanent injunction and denial of Northwestern's motion for summary judgment"); *Easley by Easley v. Snider*, 36 F.3d 297, 299 (3d Cir. 1994) (reversing the district court's finding "[f]ollowing a bench trial, … that [Pennslyvania's] program developed under the Care Act violated the ADA"); *Chiari v. City of League City*, 920 F.2d 311, 319 (5th Cir. 1991) (affirming grant of summary judgment for defendant).

Finally, State Defendants argue that their exclusion of people with certain disabilities from ALPs is not disability discrimination because "the amended regulations do not treat disabled persons different from able-bodied persons, as only disabled individuals are eligible for the AL Program."  State Br. at 24. Contrary to State Defendants' argument, intra-class disability discrimination is clearly actionable.  *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999) (rejecting state defendants' argument that plaintiffs "had identified no comparison class, *i.e.,* no similarly situated individuals given preferential treatment" because "Congress had a more comprehensive view of the concept of discrimination advanced in the ADA"); *Maziarz v. Hous. Auth. of the Town of Vernon*, No. 3:10–CV–2029 (JCH), 2012 WL 638681 (D. Conn. 2012)

(denying a motion for summary judgment in a purported class action alleging that the Town of Vernon "illegally discriminated against tenants in the senior-disabled housing … by requiring them to execute a Personal Care Sponsor Agreement and Statement" as a condition of acceptance).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendants' motions to dismiss be denied.  Plaintiffs have more than adequately pleaded their discrimination claims seeking injunctive relief as well as damages, costs and fees.  Moreover, Plaintiffs have standing to seek said relief and their claims are not moot.

Dated: New York, New York
October 9, 2018

Respectfully submitted,


_____/s/_____
Jota Borgmann, Esq. (JB-1227), of counsel
to Jeanette Zelhof, Esq.
Tanya Kessler (TK-0940)
Kevin M. Cremin (KC-4319)
MOBILIZATION FOR JUSTICE, INC.
100 William Street, 6th Floor
New York, New York 10038
(212) 417-3717
jborgmann@mfjlegal.org

Susan Ann Silverstein (SS-1234)
Iris Yohana Gonzalez
AARP FOUNDATION LITIGATION, INC.
601 E Street NW
Washington, DC 20049
(202) 434-2159
ssilverstein@aarp.org

Attorneys for Plaintiffs

48