UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC., JANE DOE and JOHN DOE,<br><br>                         Plaintiffs,<br><br>               v.<br><br>HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, THE NEW YORK STATE DEPARTMENT OF HEALTH, ELM YORK LLC, MADISON YORK ASSISTED LIVING COMMUNITY, LLC, MADISON YORK REGO PARK LLC, and VILLAGE HOUSING DEVELOPMENT FUND CORPORATION.,<br><br>                        Defendants. | 18 Civ. 3196 (VSB) (RWL)<br><br>**SETTLEMENT AGREEMENT BY AND BETWEEN FAIR HOUSING JUSTICE CENTER AND ELM YORK LLC, MADISON YORK ASSISTED LIVING COMMUNITY, LLC, AND MADISON YORK REGO PARK LLC** |

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiff Fair Housing Justice Center, Inc. (hereinafter, "Plaintiff") and Defendants Elm York LLC, Madison York Assisted Living Community, LLC, and Madison York Rego Park, LLC (collectively the "York Defendants"), by and through their respective counsel (together, the "Parties" and each a "Party").

**WHEREAS,** on August 14, 2018, Plaintiff filed an Amended Complaint, alleging that the York Defendants discriminated against prospective and current residents who use wheelchairs in their three Adult Care Facilities ("ACF") in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001, *et seq.*;

1

**WHEREAS**, the York Defendants deny the allegations of wrongdoing and liability against them in the Amended Complaint, and by entering into this Agreement do not intend to admit, and do not admit, the same;

**WHEREAS,** the York Defendants maintain they have complied and will continue to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001, *et seq.*;

**WHEREAS**, none of the provisions in this Agreement is intended to violate the regulatory requirements of New York law, and Plaintiff and the York Defendants do not believe that any of the provisions herein violate New York law; and

**WHEREAS,** the Parties wish to voluntarily resolve the claims raised by Plaintiff in the Amended Complaint, according to the terms set forth in this Agreement, as a compromise to avoid protracted expenses and litigation;

**NOW, THEREFORE,** it is hereby stipulated and agreed, by and among the Parties, that all claims shall be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## I.     DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1.      "Plaintiff" or "FHJC" means the Fair Housing Justice Center, Inc.[1]

2.      "York Defendants" means Elm York LLC, Madison York Assisted Living Community, LLC, and Madison York Rego Park, LLC, collectively.

---

[1] The Estate of Jane Doe and John Doe, other plaintiffs in the Action, did not assert claims against the York Defendants and are not necessary parties to the settlement of Plaintiff FHJC's claims against the York Defendants.

3.      "Action" means *Fair Housing Justice Center, Inc. v. Howard A. Zucker, et al.*, 18 Civ. 3196 (VSB) (RWL), pending in the United States District Court for the Southern District of New York.

4.      "Amended Complaint" means the Amended Complaint that Plaintiff filed in this Action on August 14, 2018.

5.      "Assessment Forms" include the medical evaluation, mental health evaluation, and any other forms required prior to admission by Department of Health regulations or by the York Defendants.

6.      "Assistive Mobility Device" means a power wheelchair, manual wheelchair, rollator, rolling walker, or walker.

7.      "DOH" means the New York State Department of Health.

8.      "Effective Date" means the date of signature of the last necessary Party to this Agreement.

9.      "Facility" or "Facilities" means, individually or collectively:

    a.      Elm York Assisted Living, located at 100-30 Ditmars Blvd., East Elmhurst, New York 11369;

    b.      Madison York Assisted Living, located at 112-14 Corona Avenue, Corona, New York 11368;

    c.      Madison York Home for Adults, located at 61-80 Woodhaven Blvd., Rego Park, NY 11374; and

    d.      Any other adult care facilities, including, but not limited to, assisted living programs, owned or operated by the York Defendants.

10. "Independent Applicant" refers to a prospective resident, whose initial contact with the Facilities was made either by the applicant directly, or by a relative, friend, or other person acting on the applicant's behalf.

11. "Institutional Applicant" refers to a prospective resident whose initial contact with the Facilities is an institutional referral source such as a hospital, nursing home, congregate care setting, or other health care, government, or social services entity, contacting the Facilities on behalf of the prospective resident.

12. "Marketing Materials" refers to brochures, pamphlets, Websites (as defined below), advertisements, videos, promotional materials, and any other paper or digital documents used to advertise the Facility or its services, to encourage people to apply for residency at the Facility or to encourage people to refer potential applicants to the Facility.

13. "Policy Manual" refers to any documents used by the York Defendants to provide training or guidance to its employees, agents or representatives, including the following: (i) any training or guidance about the Non-Discrimination Policy and the Reasonable Accommodation Policy described in Section V of this Agreement; (ii) marketing activities; or (iii) the Admission Process and the Retention Review Process described in Section VI of this Agreement.

14. "Principal" means any natural person who is a principal, owner, managing partner, partner, or member of any of the Defendant entities.

15. "Website" refers to any webpage maintained by or on behalf of the York Defendants for advertising purposes or informational use by potential applicants to, or residents of, the York Defendants' Facilities or persons acting on their behalf.

4

II.     **TERM AND SCOPE OF AGREEMENT**

1.     All obligations under this Agreement, unless otherwise specified, shall commence within thirty (30) days after the date that this Agreement is so-ordered by the Federal District Court for the Southern District of New York (the "District Court") (the "So Ordered Date") and shall continue up to and including December 31, 2024 (the "Settlement Period").

2.     If, during the Settlement Period, New York State modifies its adult care facility or assisted living program admission or retention regulations and the York Defendants determine that they must modify their practices and policies to comply with the new regulations such that it would be impossible to comply with this Agreement, then the York Defendants agree to notify Plaintiff.  In this event, the Parties agree to meet and confer about the proposed modifications. If, after meeting and conferring for thirty (30) days, the Parties are unable to reach agreement about required modifications, they may seek relief under paragraph 2 of Section III of this Agreement.

3.      This Agreement shall be binding on the York Defendants and all of their Principals, employees, agents, representatives, officers, heirs, assigns, subsidiaries, or successors in interest, unless otherwise specified.

4.     The terms of this Agreement shall apply to the policies, procedures, and operation of each of the Facilities, unless otherwise specified.

5.     This Agreement extends the Stipulation and Protective Order dated January 7, 2020, and numbered 197 in the Docket of this case to cover any documents disclosed during the settlement period by the York Defendants to the Plaintiff for purposes of monitoring, as described in Section VII of this Agreement. The Parties agree that all documents disclosed pursuant to Section VII of this Agreement shall be deemed confidential under the Stipulation and Protective Order.  The Parties agree that this Agreement, so-ordered by the District Court,

5

complies with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as it

constitutes a court order for purposes of 45 C.F.R. § 164.512(e).

## III.    JURISDICTION AND ENFORCEMENT

1.      The District Court shall retain jurisdiction to enforce the terms of this Agreement

upon the filing of an appropriate motion by either Party.  The Parties to this Agreement shall

endeavor in good faith to informally resolve any differences regarding compliance and

interpretation of this Agreement.  The Parties agree to seek the District Court's intervention only

for substantial matters that impair or threaten to impair the benefits a Party sought to enjoy under

this Agreement.

2.      Prior to filing any motion to enforce or modify the terms of this Agreement, a

Party must:

a.      Provide written notice of any instance of alleged noncompliance with the
        Agreement to the alleged noncompliant Party;

b.      Within ten (10) days of written notice being provided, meet and confer in
        good faith with the noncompliant Party concerning such alleged
        noncompliance;

c.      Allow an opportunity of no less than thirty (30) days following the meet
        and confer in which the allegedly noncompliant Party may cure any
        noncompliance; and

d.      During the thirty (30) day cure period, continue to meet and confer in
        good faith with the noncompliant Party concerning any unresolved dispute
        about compliance or cure.

If the allegedly noncompliant Party fails to cure within thirty (30) days as provided in

paragraph (c) above or declines to meet and confer within the deadlines set forth above, either

6

Party may request that the District Court refer the dispute to a U.S. Magistrate Judge for mediation, or, in the alternative, the Parties may mutually agree on a neutral mediator.  The York Defendants will bear any costs associated with the use of a neutral mediator.  If a mediation session is not conducted, or the mediation fails to resolve the dispute, within sixty (60) days of a Party's request to the District Court or the neutral mediator that a mediation be scheduled, a Party may file an appropriate motion for relief with the District Court.

3.      The written notice described in III.2.a. shall be provided by both (i) electronic mail and (ii) next business day express delivery service, to the addresses set forth below, which notice shall be deemed effective upon delivery:

| To Plaintiffs: | To Defendants: |
|---|---|
| Mobilization for Justice, Inc.<br>100 William St., 6th Floor<br>New York, NY  10038<br>Attn:    Kevin M. Cremin, Esq.<br>            Jota Borgman, Esq.<br>            Tanya Kessler, Esq.<br>            Daniel A. Ross, Esq.<br>Email: kcremin@mfjlegal.org<br>            jborgmann@mfjlegal.org<br>            tkessler@mfjlegal.org<br>            dross@mfjlegal.org<br><br>AARP Foundation<br>601 E Street, NW<br>Washington, DC 20049<br>Attn:    Susan A. Silverstein, Esq.<br>            Elizabeth A. Aniskevich, Esq.<br>Email: ssilverstein@aarp.org<br>            eaniskevich@aarp.org<br><br>Pillsbury Winthrop Shaw Pittman LLP<br>31 West 52nd Street<br>New York, NY 10019<br>Attn:    David G. Keyko, Esq.<br>            Jay D. Dealy, Esq.<br>            Michael J. Pisko, Esq. | O'Connell & Aronowitz<br>54 State Street<br>Albany, New York 12207<br>Attn:    Jeffrey J. Sherrin, Esq.<br>            Michael Hawrylchak, Esq.<br>Email: jsherrin@oalaw.com<br>            mhawrylchak@oalaw.com |

| Email: david.keyko@pillsburylaw.com<br>       jay.dealy@pillsburylaw.com<br>       michael.pisko@pillsburylaw.com | |

## IV.    MONETARY RELIEF

1.      The York Defendants shall pay Plaintiff the total sum of $317,500 (the "Settlement Amount") in full and final settlement of all of Plaintiff's monetary claims in this Action, including but not limited to damages, attorneys' fees, and costs.  The Settlement Amount shall be wire transferred to counsel for Plaintiff, Pillsbury Winthrop Shaw Pittman LLP, within thirty (30) days of the So Ordered Date.  The date upon which the Settlement Amount is received by counsel for Plaintiffs shall be the "Release Date."

2.      Concurrently with the execution of this Agreement, Plaintiff shall deliver to counsel for the York Defendants a signed Stipulation and Order of Dismissal in the form set forth in Exhibit A.  The Parties agree to stipulate that dismissal shall be with prejudice and each Party to bear its own costs.  The Parties also agree to stipulate that the order shall vest the Court with continuing jurisdiction for the sole purpose of enforcing the terms of the Agreement. Counsel for Plaintiff shall file the executed Stipulation and Order of Dismissal with the Court within ten (10) business days after the Release Date.

## V.    NON-DISCRIMINATION POLICY AND REASONABLE ACCOMMODATION POLICY AS TO ALL FACILITIES

### A.    Non-Discrimination.

1.      The purpose of this Agreement is: (a) to ensure that persons seeking or inquiring, directly or through another person or entity, about admission to one or more of the Facilities and current residents who want to continue residing at one of the Facilities are not denied admission or continued residency because of use of a wheelchair or other Assistive Mobility Device; and (b) to ensure that those using a wheelchair or Assistive Mobility Device are provided reasonable

accommodations or modifications where needed to afford them equal opportunity to use and enjoy the Facilities' housing and services consistent with applicable federal, state and local laws, rules and regulations.

2.      This Agreement is intended to allow the Facilities to comply with all federal, state or local laws, rules or regulations that govern the admission process or limit eligibility for admission or retention, including by using the waiver process set out below to reconcile where residents may need reasonable accommodations

3.      Each of the York Defendants shall adopt the applicable "Non-Discrimination Policy" attached hereto as Exhibit B regarding nondiscrimination against individuals with mobility impairments and/or those individuals who rely on wheelchairs and other assistive devices for mobility.

4.      Within thirty (30) days after the Effective Date, the Non-Discrimination Policy shall be included in the Policy Manual and shall be distributed to current employees involved in admissions and retention decisions.  The Non-Discrimination Policy shall be distributed to new employees involved in admission and retention decisions at the time they are hired.

5.      Within thirty (30) days after the Effective Date, the Non-Discrimination Policy shall be provided to applicants who proceed to the Assessment/Review Stage.  The Non-Discrimination Policy must be provided at or before any interview with the Administrator or the Administrator's designee and with any admission agreement.  If the applicant is denied admission without an interview with the Administrator or the Administrator's designee, the Non-Discrimination Policy must be provided with the Denial Notice.

6.      Within ninety (90) days after the Effective Date, the Non-Discrimination Policy shall be distributed to current residents.

**B.    Reasonable Accommodation.**

1.    The York Defendants shall adopt the "Reasonable Accommodation Policy" attached hereto as Exhibit C.

2.    Within thirty (30) days of the Effective Date, the Reasonable Accommodation Policy shall be included in the Policy Manual and shall be distributed to current employees involved in admissions and retention decisions.  The Reasonable Accommodation Policy shall be distributed to new employees involved in admission and retention decisions at the time they are hired.

3.    Within thirty (30) days after the Effective Date, the Reasonable Accommodation Policy shall be provided to applicants who proceed to the Assessment/Review Stage.  The Reasonable Accommodation Policy must be provided at or before any interview with the Administrator or the Administrator's designee and with any admission agreement.  If the applicant is denied admission without an interview with the Administrator or the Administrator's designee, the Reasonable Accommodation Policy must be provided with the Denial Notice.

4.    Within ninety (90) days after the Effective Date, the Reasonable Accommodation Policy shall be distributed to current residents.

**C.    Marketing Materials.**

1.    Except as noted in this paragraph, within thirty (30) days after the Effective Date, all Marketing Materials used by the York Defendants shall (i) reference the Facilities' Non-Discrimination Policy and Reasonable Accommodation Policy; and (ii) use the fair housing logo and/or state "equal housing opportunity."  The existing billboards on the Elm York and Madison York Home for Adults buildings are excluded from these requirements, though these requirements shall apply to any replacement of or change to the existing billboards.  The

billboards that have been created but not yet placed on the Madison York Assisted Living building shall include the fair housing logo but otherwise are excluded from the requirements of this paragraph, though these requirements shall apply to any replacement of or further change to the billboards.

2.      If the York Defendants use human models depicting residents in Marketing Materials with two or more photographs, drawings, or other visual representations, at least one such photograph, drawing, or visual representation must include a human model who uses a wheelchair.

3.      Marketing Materials that include photographs, drawings, or other visual representations of persons in wheelchairs will always be made available to visitors at each Facility.

4.      The York Defendants will continue to adhere to the HUD guidance on human models, a copy of which is attached hereto as Exhibit D.

5.      Nothing in Section V.C of this Agreement requires that the York Defendants create Marketing Materials, but the terms apply to any Marketing Materials that do exist or may exist during the Settlement Period.The York Defendants shall place the Fair Housing poster attached as Exhibit E at each Facility in a conspicuous location accessible to prospective and current residents and other members of the public.

6.      The York Defendants shall give to applicants and residents the brochure attached as Exhibit F, or such other government-published brochure agreed to by FHJC that provides information to people with disabilities about their fair housing rights.

11

**D.      Training.**

1.      New and current employees involved in admissions or retention decisions shall receive training at least once per year on provisions of the Fair Housing Act, Rehabilitation Act, Americans with Disabilities Act, New York State Human Rights Law, and New York City Human Rights Law, that prohibit discrimination based on disability at facilities such as the York Defendants' Facilities.  New Employees involved in admission or retention decisions shall also receive such training at the time they are hired.

2.      New and current employees involved in admissions or retention decisions shall receive training at least once per year on the York Defendants' Non-Discrimination and Reasonable Accommodation Policies adopted contemporaneously with this Agreement.  New Employees involved in admission or retention decisions shall also receive such training at the time they are hired.

**E.      Prohibition Against "No Wheelchair" Policy or Practice.**

1.      Employees of the York Defendants shall not communicate any form of a "no wheelchair" policy or practice to persons inquiring about residency, to any applicant or resident, or any representative of an applicant or resident.

2.      Within thirty (30) days after the Effective Date, using a form letter attached hereto as Exhibit G, the York Defendants shall inform all institutional referral sources who referred a resident who moved into the York Facilities in 2020 that the York Defendants will not deny admission on the basis of mobility impairment without affording the prospective resident the opportunity to participate in the reasonable accommodation process, as described by the Reasonable Accommodation Policy adopted contemporaneously with this Agreement.  A copy of each letter shall be provided to Plaintiff's counsel at the time they are disseminated.  The York

Defendants shall distribute their Non-Discrimination and Reasonable Accommodation Policies along with this form letter.

3.      York Defendants' employees, including their marketing personnel, shall have a continuing obligation to inform potential referral sources about each Facility's Non-Discrimination Policy.  Toward that end, in June of each year during the settlement period, the York Defendants shall send the form letter attached hereto as Exhibit G, with the Non-Discrimination and Reasonable Accommodation Policies, to institutional referral sources for each of the York Defendants as follows:

a.      In June of 2022, to all institutional referral sources that made two or more referrals since the adoption of the referral form.

b.      In June of 2023 and 2024, to all institutional referral sources that made three or more referrals since the prior June's mailing.

A copy of each letter shall be provided to Plaintiff's counsel at the time they are disseminated.

4.      The York Defendants shall not reject any applicant or terminate any resident on the basis that such individual is a person who uses a wheelchair for mobility, without affording any such applicant or resident the opportunity to participate in the reasonable accommodation process, as described by the Reasonable Accommodation Policy adopted contemporaneously with this Agreement.

## VI.    ADMISSION PROCESS FOR APPLICANTS/RETENTION PROCESS FOR CURRENT RESIDENTS

The York Defendants shall alter their admission process to include the following three stages in sequential order: (1) Referral; (2) Assessment/Review; and (3) Determination.  The Referral Stage may vary for Individual and Institutional Applicants, as set forth below, but the Assessment/Review and Determination stages shall generally be the same for all applicants.

**A.     Referral Stage.**

This stage shall include any initial inquiries, up to the submission of documentation required by DOH regulation prior to admission.

1.     **Independent Applicants.**

    a.     During informal, pre-assessment interactions, and throughout the application process, the York Defendants shall provide Independent Applicants with information about the services offered and admissions/eligibility requirements.  The York Defendants shall explain the Non-Discrimination Policy and Reasonable Accommodation Policy upon request, or if a mobility impairment or use of a wheelchair or other Assistive Mobility Device has been disclosed unsolicited.

    b.     The York Defendants shall disseminate any written materials, to the extent they exist, regarding services provided and general admissions/eligibility requirements to all Independent Applicants.

    c.     The York Defendants shall not, at the time of initial telephone inquiries, tours, meetings, or other informal interactions occurring before the Assessment Stage, screen out or reject Independent Applicants with mobility impairments or who use a wheelchair or other Assistive Mobility Device, or deter Independent Applicants with mobility impairments or who use a wheelchair or other Assistive Mobility Device from proceeding to the Assessment/Review stage.

    d.     The York Defendants shall not inquire of the Independent Applicant at the Referral Stage about mobility impairments, use of a wheelchair or other

14

Assistive Mobility Device, or service needs specific to individuals with mobility impairments, such as assistance with walking, climbing or descending stairs, or assistance with transferring.

e.      If a Facility has no empty beds, an Independent Applicant can request to be placed on the waitlist, as described below in Section VI.D of this Agreement.  The York Defendants shall document any periods of time where the Facilities have no empty beds and provide that documentation to Plaintiff upon request.

2.      **Institutional Applicants.**

The York Defendants shall not inquire about mobility impairments or use of a wheelchair or other Assistive Mobility Device at the Referral Stage or decline admission to an Institutional Applicant based on mobility impairments or use of a wheelchair or other Assistive Mobility Device that were disclosed without solicitation.

3.      **Applicant Tracking.**

The York Defendants shall attempt, in good faith, to keep a record of the outcome of each Institutional Applicant that includes: (1) the name of the referring institution and contact person; (2) the date of the initial inquiry; (3) name of potential resident (if known); (4) age and gender of potential resident (if known); (5) pertinent facts learned to determine outcome; (6) conclusion reached or action taken.  The referral form to be used is attached hereto as Exhibit H.

**B.      Assessment/Review Stage.**

1.      The Assessment portion of the Assessment/Review Stage shall involve acquiring such information as the York Defendants need to make an admission decision, which includes the completion of the Assessment Forms and interview as required by DOH regulations. Following or in the process of the Assessment portion of this Stage, the Facility shall review the information provided to it and determine whether the Facility can meet the needs of the Independent or Institutional Applicant, at which point mobility may be considered.

2.      The York Defendants shall not refuse any applicant access to the Assessment/Review Stage on the basis that the individual has a mobility impairment or uses a wheelchair or other Assistive Mobility Device.

3.      The York Defendants shall not discourage or deter Independent or Institutional Applicants from proceeding to the Assessment/Review Stage based on a mobility impairment or use of a wheelchair or other Assistive Mobility Device.

4.      The York Defendants shall retain the referral form completed for each inquiry or referral received.  The York Defendants shall also retain any information collected or considered before making an admission decision for prospective residents who proceed to the Assessment/Review Stage, including but not limited to the Assessment Forms and a record of the outcome of each applicant who progresses to the Assessment/Review Stage.

5.      If the Facility determines that it could meet the mobility needs of the applicant by granting a reasonable accommodation or modification, whether or not such accommodation or modification was requested, it must offer such reasonable accommodation or modification.

6.      When a Facility is able to offer reasonable accommodations to an applicant or resident who uses a wheelchair or other Assistive Mobility Device, consistent with federal law

and 18 NYCRR §§ 487.4(b) and 494.4(b), but who would otherwise be barred from admission or retention under mobility-related provisions of 18 NYCRR § 487.4(c),[2] the Facility shall contact the DOH in writing to describe the accommodation and seek DOH approval to admit or retain the applicant or resident.

  7.  When necessary to obtain such DOH approval to admit the applicant, the Facility shall seek a regulatory waiver pursuant to 18 NYCRR §§ 487.3(g)(1),494.3(g)(1), or any other provision of the Social Services Law and Regulations.

  8.  If the DOH prohibits the Facility from admitting or retaining the person, Plaintiff shall not consider the failure to admit or retain the person to be a violation of this Agreement. However, the Facility shall immediately notify Plaintiff's counsel and provide to Plaintiff's counsel copies of any related communications with the DOH regarding the person in question.

  **C.  Determination Stage.**

  1.  Each Facility shall complete the Denial Form/Notice attached hereto as Exhibit I for every Independent Applicant or Institutional Applicant who proceeded to the assessment stage and was denied admission in full or in part based on mobility issues.

  2.  Each Facility shall send the completed Denial Form/Notice to denied Individual Applicants and, upon request, to denied Institutional Applicants.

  3.  The Denial Form/Notice shall explain the reason for denial, referring to details of the Assessment Forms and:

---

[2] Barring admission or retention of people who are chronically bedfast; who chronically require the physical assistance of another person to transfer; who chronically require the physical assistance of another person in order to walk; who chronically require the physical assistance of another person to climb or descend stairs, unless assignment on a floor with ground-level egress can be made; and people who are dependent on medical equipment.

      a.      The Facility's current safety plan/evacuation plans if the denial is due to safety concerns; or

      b.      The Facility's staffing and resident population; or

      c.      Specific statutory or regulatory provision(s) that preclude admission, if the DOH denied the Facility's waiver request, as described above.

4.      Nothing contained herein is intended to, nor shall it be interpreted as, altering the legal responsibilities and obligations under city, state, and federal law of the York Defendants with respect to:

      a.      what is a reasonable accommodation or modification; or

      b.      who bears the costs of such accommodation or modification.

5.      All Denial Forms/Notices shall be retained by the Facility for five (5) years.

**D.    Waiting List.**

To the extent that a denial is based on limited staffing, room availability, or the resident population that could change in the future, and where the applicant does not require immediate placement, the York Defendants shall establish a waiting list for such applicants and notify them if/when they are able to accommodate the applicant at a future date.  Such applicants shall be told that they have been placed on a waiting list and that they will be maintained on the waiting list for at least two (2) years after their application is denied.

**E.    Retention Review for Current Residents.**

1.      Decisions to terminate residency because a resident's needs exceed the regulatory retention standards based in full or in part on mobility issues shall be assessed and documented in the same manner as admission assessments, as set forth in Section VI.B of this Agreement.

2.      For each resident who uses a wheelchair or other Assistive Mobility Device and is discharged from a Facility (whether voluntarily or involuntarily) because their physical needs exceed the regulatory retention standards, the York Defendants shall complete the termination form attached hereto as Exhibit J.

3.      For any discharge, if an outside provider or medical facility determines that the York Defendants could meet the needs of the resident, this must be acknowledged in the documentation and specifically addressed by the York Defendants.

4.      If a York Defendant decides to terminate an admission agreement, including any determination that a resident has been permanently discharged from the Facility, it must provide the resident with a notice of termination as required by statute and follow the statutory and regulatory framework for terminating the admission agreement.  The York Defendants shall transmit, via email to the addresses listed under paragraph 3 of Section III, copies of all such notices of termination to Plaintiff's counsel within fifteen (15) business days of the notice for residents whose residency is terminated in whole or in part due to mobility issues.

**VII.   MONITORING**

1.      On or before January 1, 2022, the York Defendants shall provide to Plaintiff's counsel all Referral Log Forms, Denial Forms, and Termination Log Forms created since November 1, 2021.

2.      On or before March 1 and September 1, 2022; March 1 and September 1, 2023; and March 1 and September 1, 2024, the York Defendants shall provide to Plaintiff's counsel all Referral Log Forms, Denial Forms, and Termination Log Forms created since, or otherwise not provided in, the previous production.

3.     The York Defendants shall maintain Assessment Forms collected or created regarding any persons admitted or denied during the Settlement Period for at least the duration of the Settlement Period.

4.     At Plaintiff's request via email to the addresses listed under paragraph 3 of Section III, the York Defendants shall provide Assessment Forms collected or created regarding any persons admitted or denied during the Settlement Period, within fifteen (15) business days of Plaintiff's request.

5.     Plaintiff will keep confidential all documents provided by the York Defendants for monitoring purposes pursuant to the terms of this Agreement and will use the information for the sole purpose of monitoring compliance with this Agreement.  If Plaintiff is served with a court order, subpoena or other similar legal process that purports to require the production of any such confidential information to any tribunal or party other than the York Defendants, Plaintiff agrees to notify the York Defendants prior to producing any such confidential information and, if reasonably possibly, at least ten (10) business days before the time within which Plaintiff is required to produce such confidential information.

6.     Plaintiff may conduct compliance testing of the York Defendants' Facilities during Settlement Period.

## VIII.   TRAINING

In addition to the York Defendants' internal training to be implemented as required by this Agreement, during 2021, Plaintiff shall conduct two or three training sessions on housing discrimination.  Gershon Klein; Mark Bienstock; Administrators, Assistant Administrators, Case Managers, and Marketing Personnel of each of the York Defendants' Facilities; and any other employees involved in the York Defendants' admission and retention processes, including

requests for reasonable accommodations/modifications, shall be required to attend one of the sessions.

## IX.    RELEASES

1.      In exchange for the York Defendants' agreement to the terms set forth in this Agreement and payment of the monetary relief described above, effective upon the Release Date Plaintiff fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Agreement, the York Defendants and all their Principals, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys, and insurers of the York Defendants from any and all liability, claims, or rights of action, of any kind or nature whatsoever arising from the beginning of time through the So Ordered Date (hereinafter, "Plaintiff's Released Claims").  For the avoidance of doubt, the Plaintiff's Released Claims include all claims (1) whether disclosed or undisclosed, anticipated or unanticipated, suspected or unsuspected, accrued or unaccrued, matured or not matured, perfected or not perfected, liquidated or not liquidated, fixed or contingent, ripened or unripened, (2) whether at law or in equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory, and (3) whether asserted directly, indirectly, derivatively, or otherwise; provided however, that Plaintiff's Released Claims shall not include any claims to enforce any provision of this Agreement.

2.      Effective upon the Release Date, the York Defendants fully and forever release, acquit, and forever discharge with prejudice, subject to the terms of this Agreement, Plaintiff and its directors, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys and insurers from any and all liability, claims, or rights of action, of any kind or nature whatsoever arising from the beginning of time through the So Ordered Date (hereinafter, "Defendants' Released Claims").  For the avoidance of doubt, Defendants' Released

Claims include all claims (1) whether disclosed or undisclosed, anticipated or unanticipated, suspected or unsuspected, accrued or unaccrued, matured or not matured, perfected or not perfected, liquidated or not liquidated, fixed or contingent, ripened or unripened, (2) whether at law or in equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory, and (3) whether asserted directly, indirectly, derivatively, or otherwise; provided however, that the Defendants' Released Claims shall not include any claims to enforce any provision of this Agreement.

3.      Nothing herein shall be interpreted as releasing any rights and obligations created by this Agreement, or to prohibit any Party from enforcing any rights or performing any obligations that they may have under this Agreement.

## X.      CONSTRUCTION AND SEVERABILITY

1.      This Agreement shall be deemed to have been jointly drafted, and no provision herein shall be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

2.      If any provision in this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of the Agreement.  The Parties agree that payment of the Settlement Amount as provided herein is a material term of this Agreement.  The Parties to this Agreement shall consult and use their best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

3.      Except with respect to the Stipulation and Protective Order referenced in Section II.5, this Agreement contains all the terms and conditions agreed upon by the Parties hereto, and

no prior oral or written communications or oral or written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein.

4.      The Parties to this Agreement expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys, and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

5.      The Parties agree this Final Settlement Agreement shall be subject to and interpreted in accordance with the laws of the State of New York, exclusive of its choice of law rules that would require the application of laws other than those of the State of New York.

6.      The failure or delay by a Party to require performance of any provision hereof shall not affect that Party's right to require performance at any time thereafter, nor shall a waiver of any breach or default constitute a waiver of any subsequent default or a waiver of the provision itself or any other provision.

7.      This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original.  For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

AGREED TO BY THE PARTIES:

Dated: _____, 2021          Dated: _____, 2021

_____      _____
FAIR HOUSING JUSTICE CENTER            ELM YORK LLC, MADISON YORK
By: Elizabeth Grossman                 ASSISTED LIVING COMMUNITY,
    Executive Director                 LLC, MADISON YORK REGO PARK
                                       LLC
                                       By: Gershon Klein


It is so ORDERED this _____ day of _____, 2021.

_____
Hon. Vernon S. Broderick
United States District Judge

24

AGREED TO BY THE PARTIES:

Dated: _11/23_____, 2021          Dated: _____, 2021

_____          _____
FAIR HOUSING JUSTICE CENTER        ELM YORK LLC, MADISON YORK
By: Elizabeth Grossman             ASSISTED LIVING COMMUNITY,
    Executive Director             LLC, MADISON YORK REGO PARK
                                   LLC
                                   By: Gershon Klein


It is so ORDERED this _____ day of _____, 2021.

_____
Hon. Vernon S. Broderick
United States District Judge

24

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC., JANE DOE and JOHN DOE,<br><br>                             Plaintiffs,<br><br>          v.<br><br>HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, THE NEW YORK STATE DEPARTMENT OF HEALTH, ELM YORK LLC, MADISON YORK ASSISTED LIVING COMMUNITY, LLC, MADISON YORK REGO PARK LLC, and VILLAGE HOUSING DEVELOPMENT FUND CORPORATION.,<br><br>                             Defendants. | 18 Civ. 3196 (VSB) (RWL)<br><br>**PROPOSED ORDER AND STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)** |

WHEREAS, pursuant to the Settlement Agreement dated _____, and filed with the Court on ____ (ECF No. ___) (the "Settlement Agreement"), Plaintiff Fair Housing Justice Center, Inc. (the "Plaintiff"), and Defendants Elm York LLC, Madison York Assisted Living Community, LLC, and Madison York Rego Park, LLC (collectively, the "York Defendants") have agreed to dismiss this case, in its entirety with prejudice;

WHEREAS, pursuant to the Settlement Agreement, Plaintiffs Fair Housing Justice Center, Inc. and the York Defendants agreed that the Court shall have continuing jurisdiction for the sole purpose of enforcing the terms of the Agreement;

HEREBY STIPULATED AND AGREED by and between the parties' respective counsel(s) that the above-captioned action as against the York Defendants is voluntarily dismissed with prejudice pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii), the

terms of the Settlement Agreement are incorporated into this Order,  the Court shall retain

jurisdiction for the sole purposes of enforcing the Settlement Agreement, and the Plaintiff and

the York Defendants are to bear their own costs, expenses, and attorneys' fees except as outlined

by the Settlement Agreement.

FOR PLAINTIFF:


PILLSBURY WINTHROP SHAW PITTMAN LLP


By:_____          Dated: _____, 2021
     David G. Keyko
     Jay Dealy
     Michael J. Pisko
     31 West 52nd Street
     New York, NY  10019
     Tel:  212-858-1000


AARP FOUNDATION


By:_____          Dated: _____, 2021
     Susan Ann Silverstein
     Elizabeth Aniskevich
     601 E Street, NW
     Washington, DC 20049
     202-434-2159


MOBILIZATION FOR JUSTICE, INC.


By:_____          Dated: _____, 2021
     Kevin M. Cremin
     Jota Borgmann
     Tanya Kessler
     100 Williams Street
     New York, NY  10038
     Tel:  212-417-3700

4839-7128-3957.v4

FOR YORK DEFENDANTS:

O'CONNELL & ARONOWITZ

By:_____          Dated: _____, 2021
     Jeffrey J. Sherrin
     Michael Hawrylchak
     54 State Street
     Albany, New York 12207
     Tel:  518-462-5601

4839-7128-3957.v4

SO ORDERED

Dated: _____        _____

Hon. Vernon S. Broderick
United States District Judge

[1]

Exhibit B

**Non-Discrimination Statement**
**for York Facilities**

Elm York Home for Adults does not discriminate against any person on basis of race,
color, national origin, religion/creed, sex, disability (including the use of a
wheelchair), marital or partnership status, age, sexual orientation, gender identity,
lawful source of income, immigration status, lawful occupation, status as a victim of
domestic violence, or military status.

Madison York Rego Park does not discriminate against any person on basis of race,
color, national origin, religion/creed, sex, disability (including the use of a
wheelchair), marital or partnership status, age, sexual orientation, gender identity,
lawful source of income, immigration status, lawful occupation, status as a victim of
domestic violence, or military status.

Madison York Assisted Living does not discriminate against any person on basis of
race, color, national origin, religion/creed, sex, disability (including the use of a
wheelchair), marital or partnership status, age, sexual orientation, gender identity,
lawful source of income, immigration status, lawful occupation, status as a victim of
domestic violence, or military status.

Exhibit C

**Reasonable Accommodation Policy and Request Form**

[Name of Facility] is committed to providing equal housing opportunity.  As part of this commitment, we will modify our rules, policies, practices, and services to meet the needs of individuals with disabilities upon request if the accommodation is reasonable and necessary to allow you to fully use and enjoy residing in our community.

It is our policy to reject reasonable accommodation requests only when they are not related to a disability-based need, impose an undue financial and administrative burden, or fundamentally alter the nature of the services we provide.  In such case, we will discuss reasonable alternatives that may meet the requesting individual's needs.  We will bear any incidental costs of providing a reasonable accommodation.

**Procedure for Making Request**

Requests for reasonable accommodation may be submitted in writing.  If you need a reasonable accommodation due to a disability, we encourage you to submit the attached form.  The request need not be in writing to be considered by us.  Nor must it be made using the attached form to be considered a valid request for a reasonable accommodation.

If you are making a reasonable accommodation request to us, fully describe the required accommodation on the Reasonable Accommodation Request form.  Please include any additional information that you believe would be useful in assisting us to evaluate the request.

**Verification and Documentation**

If your disability or disability-related need is not obvious, we may request that you provide verification that you have a disability-related need for the requested accommodation.  If you are an applicant for admission and your disability-related need is documented in your medical evaluation or nursing assessment, we will let you know if we require further documentation.

**Providing Disability-Related Accommodations**

We will discuss your request for a reasonable accommodation with you.  If the

accommodation is approved, we will provide a letter explaining how and when the accommodation can be provided.

If a specific accommodation cannot be made because it is an undue financial and administrative burden or because it would be a fundamental alteration of the services provided by us, then we will discuss alternative accommodations that may address your disability-related need.  If no alternative meets your disability-related the needs, or if you and [Name of Facility] cannot agree on a reasonable alternative, we will notify you of the denial in writing in a reasonable amount of time and will provide an opportunity for you to make a revised reasonable accommodation request.  If your request is part of your application for admission, we will address it in writing as part of our application denial.

**Reasonable Accommodation Request**

Name: _____

Address: _____

_____

Phone: _____

I am requesting a reasonable accommodation on behalf of:_____
(Name of Person with Disability or "Self")

Please describe the reasonable accommodation you are requesting and the disability-
related reason for your request:

_____

_____

_____

_____

Date: _____     Signature: _____

This form, along with any additional information, should be submitted to:

If you have any questions, please contact _____ at _____
_____

**<u>For Office Use Only</u>**

[ ]     Approved     Reason:_____

[ ]     Denied              _____

_____

Exhibit D

# PART 109--FAIR HOUSING ADVERTISING

Sec.
109.5       Policy.
109.10      Purpose.
109.15      Definitions.
109.16      Scope.
109.20      Use of words, phrases, symbols, and visual aids.
109.25      Selective use of advertising media or content.
109.30      Fair housing policy and practices.


Appendix I to Part 109—Fair Housing Advertising

Authority:   Title VIII, Civil Rights Act of 1968, 42 U.S.C. 3600-3620; section 7(d), Department of HUD Act, 42 U.S.C. 3535(d).

Source:  54 FR 3308, Jan. 23, 1989, unless otherwise noted.

## § 109.5    Policy.

It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.  The provisions of the Fair Housing Act (42 U.S.C. 3600, *et seq.*) make it unlawful to discriminate in the sale, rental, and financing of housing, and in the provision of brokerage and appraisal services, because of race, color, religion, sex, handicap, familial status, or national origin.  Section 804(c) of the Fair Housing Act, 42 U.S.C. 3604(c), as amended, makes it unlawful to make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement, with respect to the sale or rental of a dwelling, that indicates any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination. However, the prohibitions of the act regarding familial status do not apply with respect to *housing for older persons*, as defined in section 807(b) of the act.

## § 109.10    Purpose.

The purpose of this part is to assist all advertising media, advertising agencies and all other persons who use advertising to make, print, or publish, or cause to be made, printed, or published, advertisements with respect to the sale, rental, or financing of dwellings which are in compliance with the requirements of the Fair Housing Act. These regulations also describe the matters this Department will review in evaluating compliance with the Fair Housing Act in connection with investigations of complaints alleging discriminatory housing practices involving advertising.

## § 109.15    Definitions.

As used in this part:

(a) *Assistant Secretary* means the Assistant Secretary for Fair Housing and Equal Opportunity.

(b) *General Counsel* means the General Counsel of the Department of Housing and Urban Development.

(c) *Dwelling* means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

(d) *Family* includes a single individual.

(e) *Person* includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Code, receivers, and fiduciaries.

(f) *To rent* includes to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant.

(g) *Discriminatory housing practice* means an act that is unlawful under section 804, 805, 806, or 818 of the Fair Housing Act.

(h) *Handicap* means, with respect to a person--

(1)  A physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) A record of having such an impairment, or

(3) Being regarded as having such an impairment.

This term does not include current, illegal use of or addiction to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).  For purposes of this part, an individual shall not be considered to have a handicap solely because that individual is a transvestite.

(i) *Familial status* means one or more individuals (who have not attained the age of 18 years) being domiciled with--

(1) A parent or another person having legal custody of such individual or individuals;  or

(2) The designee of such parent or other person having such custody, with the written permission of such parent or other person.  The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

## § 109.16    Scope.

(a) *General*. This part describes the matters the Department will review in evaluating compliance with the Fair Housing Act in connection with investigations of complaints alleging discriminatory housing practices involving advertising. Use of these criteria will be considered by the General Counsel in making determinations as to whether there is reasonable cause, and by the Assistant Secretary in making determinations that there is no reasonable cause, to believe that a discriminatory housing practice has occurred or is about to occur.

(1) *Advertising media*. This part provides criteria for use by advertising media in determining whether to accept and publish advertising regarding sales or rental transactions. Use of these criteria will be considered by the General Counsel in making determinations as to whether there is reasonable cause, and by the Assistant Secretary in making determinations that there is no reasonable cause, to believe that a discriminatory housing practice has occurred or is about to occur.

(2) *Persons placing advertisements.* A failure by persons placing advertisements to use the criteria contained in this part, when found in connection with the investigation of a complaint alleging the making or use of discriminatory advertisements, will be considered by the General Counsel in making a determination of reasonable cause, and by the Assistant Secretary in making determinations that there is no reasonable cause, to believe that a discriminatory housing practice has occurred or is about to occur.

(b) *Affirmative advertising efforts.* Nothing in this part shall be construed to restrict advertising efforts designed to attract persons to dwellings who would not ordinarily be expected to apply, when such efforts are pursuant to an affirmative marketing program or undertaken to remedy the effects of prior discrimination in connection with the advertising or marketing of dwellings.

[54 FR 308, Jan. 23 1989, as amended at 55 FR 53294, Dec. 28, 1990.]

## § 109.20    Use of words, phrases, symbols, and visual aids.

The following words, phrases, symbols, and forms typify those most often used in residential real estate advertising to convey either overt or tacit discriminatory preferences or limitations. In considering a complaint under the Fair Housing Act, the Department will normally consider the use of these and comparable words, phrases, symbols, and forms to indicate a possible violation of the act and to establish a need for further proceedings on the complaint, if it is apparent from the context of the usage that discrimination within the meaning of the act is likely to result.

(a) *Words descriptive of dwelling, landlord, and tenants*. White private home, Colored home, Jewish home, Hispanic residence, adult building.

(b) *Words indicative of race, color, religion, sex, handicap, familial status, or national origin--*

(1) *Race*--Negro, Black, Caucasian, Oriental, American Indian.

(2) *Color*--White, Black, Colored.

(3) *Religion*--Protestant, Christian, Catholic, Jew.

(4) *National origin*--Mexican American, Puerto Rican, Philippine, Polish, Hungarian, Irish, Italian, Chicano, African, Hispanic, Chinese, Indian, Latino.

(5) *Sex*--the exclusive use of words in advertisements, including those involving the rental of separate units in a single or multi-family dwelling, stating or tending to imply that the housing being advertised is available to persons of only one sex and not the other, except where the sharing of living areas is involved.  Nothing in this part restricts advertisements of dwellings used exclusively for dormitory facilities by educational institutions.

(6) *Handicap*--crippled, blind, deaf, mentally ill, retarded, impaired, handicapped, physically fit. Nothing in this part restricts the inclusion of information about the availability of accessible housing in advertising of dwellings.

(7) *Familial status*--adults, children, singles, mature persons.  Nothing in this part restricts advertisements of dwellings which are intended and operated for occupancy by older persons and which constitute *housing for older persons* as defined in Part 100 of this title.

(8) *Catch words*--Words and phrases used in a discriminatory context should be avoided, e.g., *restricted, exclusive, private, integrated, traditional, board approval or membership approval.*

(c) *Symbols or logotypes.* Symbols or logotypes which imply or suggest race, color, religion, sex, handicap, familial status, or national origin.

(d) *Colloquialisms.* Words or phrases used regionally or locally which imply or suggest race, color, religion, sex, handicap, familial status, or national origin.

(e) *Directions to real estate for sale or rent (use of maps or written instructions).* Directions can imply a discriminatory preference, limitation, or exclusion.  For example, references to real estate location made in terms of racial or national origin significant landmarks, such as an existing black development (signal to blacks) or an existing development known for its exclusion of minorities (signal to whites).  Specific directions which make reference to a racial or national origin significant area may indicate a preference.  References to a synagogue, congregation or parish may also indicate a religious preference.

(f) *Area (location) description.* Names of facilities which cater to a particular racial, national origin or religious group, such as country club or private school designations, or names of facilities which are used exclusively by one sex may indicate a preference.

## § 109.25   Selective use of advertising media or content.

The selective use of advertising media or content when particular combinations thereof are used exclusively with respect to various housing developments or sites can lead to discriminatory

results and may indicate a violation of the Fair Housing Act. For example, the use of English language media alone or the exclusive use of media catering to the majority population in an area, when, in such area, there are also available non-English language or other minority media, may have discriminatory impact. Similarly, the selective use of human models in advertisements may have discriminatory impact. The following are examples of the selective use of advertisements which may be discriminatory:

(a) *Selective geographic advertisements*. Such selective use may involve the strategic placement of billboards; brochure advertisements distributed within a limited geographic area by hand or in the mail; advertising in particular geographic coverage editions of major metropolitan newspapers or in newspapers of limited circulation which are mainly advertising vehicles for reaching a particular segment of the community; or displays or announcements available only in selected sales offices.

(b) *Selective use of equal opportunity slogan or logo*. When placing advertisements, such selective use may involve placing the equal housing opportunity slogan or logo in advertising reaching some geographic areas, but not others, or with respect to some properties but not others.

(c) *Selective use of human models when conducting an advertising campaign*. Selective advertising may involve an advertising campaign using human models primarily in media that cater to one racial or national origin segment of the population without a complementary advertising campaign that is directed at other groups. Another example may involve use of racially mixed models by a developer to advertise one development and not others. Similar care must be exercised in advertising in publications or other media directed at one particular sex, or at persons without children. Such selective advertising may involve the use of human models of members of only one sex, or of adults only, in displays, photographs or drawings to indicate preferences for one sex or the other, or for adults to the exclusion of children.

## § 109.30 Fair housing policy and practices.

In the investigation of complaints, the Assistant Secretary will consider the implementation of fair housing policies and practices provided in this section as evidence of compliance with the prohibitions against discrimination in advertising under the Fair Housing Act.

(a) *Use of Equal Housing Opportunity logotype, statement, or slogan.* All advertising of residential real estate for sale, rent, or financing should contain an equal housing opportunity logotype, statement, or slogan as a means of educating the homeseeking public that the property is available to all persons regardless of race, color, religion, sex, handicap, familial status, or national origin. The choice of logotype, statement or slogan will depend on the type of media used (visual or auditory) and, in space advertising, on the size of the advertisement. Table I (see Appendix I) indicates suggested use of the logotype, statement, or slogan and size of logotype. Table II (see Appendix I) contains copies of the suggested Equal Housing Opportunity logotype, statement and slogan.

(b) *Use of human models.* Human models in photographs, drawings, or other graphic techniques may not be used to indicate exclusiveness because of race, color, religion, sex,

handicap, familial status, or national origin.  If models are used in display advertising campaigns, the models should be clearly definable as reasonably representing majority and minority groups in the metropolitan area, both sexes, and, when appropriate, families with children. Models, if used, should portray persons in an equal social setting and indicate to the general public that the housing is open to all without regard to race, color, religion, sex, handicap, familial status, or national origin, and is not for the exclusive use of one such group.

(c) *Coverage of local laws*. Where the Equal Housing Opportunity statement is used, the advertisement may also include a statement regarding the coverage of any local fair housing or human rights ordinance prohibiting discrimination in the sale, rental or financing of dwellings.

(d) *Notification of fair housing policy*--

(1) *Employees*. All publishers of advertisements, advertising agencies, and firms engaged in the sale, rental or financing of real estate should provide a printed copy of their nondiscrimination policy to each employee and officer.

(2) *Clients*. All publishers or advertisements and advertising agencies should post a copy of their nondiscrimination policy in a conspicuous location wherever persons place advertising and should have copies available for all firms and persons using their advertising services.

(3) *Publishers' notice*. All publishers should publish at the beginning of the real estate advertising section a notice such as that appearing in Table III (see Appendix I). The notice may include a statement regarding the coverage of any local fair housing or human rights ordinance prohibiting discrimination in the sale, rental or financing of dwellings.

APPENDIX I TO PART 109--FAIR HOUSING ADVERTISING

The following three tables may serve as a guide for the use of the Equal Housing Opportunity logotype, statement, slogan, and publisher's notice for advertising:

Table I

A simple formula can guide the real estate advertiser in using the Equal Housing Opportunity logotype, statement, or slogan.

In all space advertising (advertising in regularly printed media such as newspapers or magazines) the following standards should be used:

| Size of advertisement | *Size of logotype in inches* |
|---|---|
| ½ page or larger……………………………….. | 2x2 |
| 1/8 page up to ½ page………………………… | 1x1 |
| 4 column inches to 1/8 page…........................ | ½ x ½ |

| | |
|---|---|
| Less than 4 column inches | ([1]) |

[1]Do not use.

In any other advertisements, if other logotypes are used in the advertisement, then the Equal Housing Opportunity logo should be of a size at least equal to the largest of the other logotypes; if no other logotypes are used, then the type should be bold display face which is clearly visible. Alternatively, when no other logotypes are used, 3 to 5 percent of an advertisement may be devoted to a statement of the equal housing opportunity policy.

In space advertising which is less than 4 column inches (one column 4 inches long or two columns 2 inches long) of a page in size, the Equal Housing Opportunity slogan should be used. Such advertisements may be grouped with other advertisements under a caption which states that the housing is available to all without regard to race, color, religion, sex, handicap, familial status, or national origin.

Table II

Illustrations of Logotype, Statement, and Slogan.  Equal Housing Opportunity Logotype:



Equal Housing Opportunity Statement:  We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation.  We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, handicap, familial status, or national origin.

Equal Housing Opportunity Slogan:  "Equal Housing Opportunity."

Table III

Illustration of Media Notice--Publisher's notice:  All real estate advertised herein is subject to the Federal Fair Housing Act, which makes it illegal to advertise "any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or intention to make any such preference, limitation, or discrimination."

We will not knowingly accept any advertising for real estate which is in violation of the law. All persons are hereby informed that all dwellings advertised are available on an equal opportunity basis.

Exhibit E

# THERE'S NO ROOM FOR HOUSING DISCRIMINATION IN NYC

## Discrimination may sound like this:

*"Installing a ramp is expensive and would ruin the appearance of the building."*

*"I don't accept vouchers."*

*"I don't have to make that repair; undocumented tenants don't have the same rights as other tenants."*

*"They told me the apartment was available, but then when they saw I was black, they changed their mind."*

## The NYC Human Rights Law makes it illegal to discriminate against a resident or housing applicant based on

 National Origin, Immigration Status, Religion

 Gender, Gender Identity, Gender Expression, Sexual Orientation

 Disability

 Occupation, Source of Income

 Presence of Children, Marital or Partnership Status, Age, Race, Color, Pregnancy, Status as Victim of Domestic Violence, Sexual Violence, and Stalking (as of 7/26/16)

## FAIR HOUSING. It's Your Right. It's Your Responsibility. It's the Law.

 Commission on Human Rights | Department of Housing Preservation and Development

 @NYCCHR @NYCHousing

If you have experienced discrimination, call **311** and ask for the Commission on Human Rights or call the Commission's Infoline at **(212) 416-0197**. Visit **nyc.gov/fairhousingnyc**.

#FairHousingNYC

Exhibit F

## Filing a Complaint

If you have questions or believe you have been a victim of housing discrimination, the following agencies may be able to help. You can find contact information for each on the back of this brochure.

• The New York State Attorney General's Civil Rights Bureau investigates and prosecutes discriminatory policies, and patterns or practices of discrimination, including housing discrimination.

• The New York State Division of Human Rights handles individual complaints of discrimination.  You have one year after an alleged violation to file a complaint.

• The U.S. Department of Housing and Urban Development (HUD) handles individual complaints of discrimination based on the federal Fair Housing Act. You have one year after an alleged violation to file a complaint.

• The New York City Commission on Human Rights (CCHR) handles individual complaints of discrimination based on the New York City Human Rights Law.  You have one year after an alleged violation to file a complaint. You can't file a claim with CCHR if you have already filed the same claim based on the same facts with another agency or in court.

• The Fair Housing Justice Center assists individuals with housing discrimination complaints and investigates and documents housing discrimination by conducting fair housing testing.

## Resources

**New York State Office of the Attorney General Civil Rights Bureau**
28 Liberty Street
New York, NY 10005
(212) 416-8250
(800) 788-9898 (TDD)
ag.ny.gov

**New York State Division of Human Rights**
One Fordham Plaza, 4th Floor
Bronx, NY 10458
888-392-3644
(718) 741-8300 (TDD/TTY)
dhr.ny.gov

**U.S. Department of Housing and Urban Development, Fair Housing Enforcement Center**
26 Federal Plaza, Room 3541
New York, NY 10278-0068
(212)264-8000
(212) 264-0927 (TTY)
hud.gov

**New York City Human Rights Commission**
22 Reade Street, First Floor
New York, NY 10007
(212) 306-7450
nyc.gov/humanrights

**Fair Housing Justice Center**
30-30 Northern Boulevard Suite 302
Long Island City, NY 11101
(212) 400-8201
fairhousingjustice.org

# Housing Rights of People with Disabilities

**Federal, State, and City laws exist to ensure that equal housing opportunities are available to all, including people with disabilities. This brochure explains some of those laws and includes information about what to do if you believe a landlord has discriminated against you.**

Federal, State, and City laws prohibit housing discrimination on the basis of a disability. For purposes of these laws, disability includes

• a physical, mental or medical impairment which prevents the exercise of a normal bodily function or is demonstrable by medically accepted diagnostic techniques, or

• a record of such impairment, or

• a condition regarded by others as such impairment.

## Non-Discrimination

It is unlawful to discriminate against individuals with a disability in the rental, sale, or leasing of housing.

It is unlawful for a landlord to take any discriminatory action because of a history of a disability or because they perceive that an individual has a disability.

It is also unlawful for a landlord to take any discriminatory action against a person for filing a complaint of discrimination.

Federal, State, and City antidiscrimination laws apply to everyone who sells, rents, or leases housing, including owners, managing agents, and real estate brokers or other agents.

## Reasonable Accommodations

Federal and State antidiscrimination laws require that efforts be made to accommodate the needs of people with disabilities in housing.

Specifically, the law requires that:

- a person with a disability be permitted to make reasonable modifications to the occupied premises, if the modifications are necessary to have full use and enjoyment of the premises;

- reasonable accommodations be made in rules, policies, practices, or services, when such accommodations are necessary to permit a person with a disability equal opportunity to use and enjoy the housing.

For further information on state laws prohibiting disability discrimination and on the procedures for filing a complaint, please contact one of the agencies listed on the reverse of this brochure.

## Remedies

If it is found that discrimination has taken place, steps may be taken to remedy the situation.

These can include:

- Requiring changes in policies and practices;
- Making the housing or loan available;
- Assessing money damages and/or attorney fees; or Imposing civil fines and penalties.

Example:

You rent an apartment in an apartment building and need to use a wheelchair to enter and leave your apartment. You cannot get up the steps at the front of the building without assistance of others. Do you have any options?

Your landlord may be required to provide you with a ramp or other reasonable means to permit you to access the building.

Exhibit G

Dear _____:

We write to clarify the admission policies for [facility name]:

As you know, [facility name] offers Assisted Living Program services to residents who are medically stable but need long-term residential care, room, board, housekeeping, personal care, supervision, and home health services.

We write to clarify that [facility name] does not discriminate against people who use wheelchairs.  We consider all prospective residents based upon our ability to meet their individual needs, including those who may use a wheelchair and those that may need a reasonable accommodation. Furthermore, when necessary, we will seek permission from the New York State Department of Health to admit wheelchair users.

We value your referral of prospective residents and look forward to continue working with you.

Sincerely,

[Administrator of facility]

Exhibit H

# The York Group
_____ Referral Log Form for Potential Applicants

Completed by: _____ Date: _____

Name: _____ Age/DOB: _____ Gender: M / F / X

Current Address: _____ Phone #: _____

Family Contact / Guardian: _____ Phone #: _____

Referral Source: _____ Phone #: _____

Referral made by: ☐ Phone ☐ Email ☐ Fax ☐ in person at (location) _____

Reason for Referral: _____

Spoke to potential applicant?   ☐ No  ☐ by phone  ☐ in person at _____

Spoke to family/guardian?   ☐ No  ☐ by phone  ☐ in person at _____

Information gathered from referral source, potential applicant, and family:

_____

_____

_____

_____

_____

_____

Was use (or non-use) of a mobility device disclosed? ☐ Not disclosed ☐ Disclosed:

  ☐ None  ☐ Cane  ☐ Walker/Rollator  ☐ Manual Wheelchair  ☐ Power Wheelchair

If disclosed, disclosed by: ☐ Observation ☐ Potential Applicant / family contact ☐ Referral Source

OUTCOME: ☐ Proceed to assessment  ☐ Do not proceed to assessment

If potential applicant does not proceed to assessment:

☐ Potential applicant accepted different placement before follow-up

☐ Potential applicant decided not to proceed because _____

Potential applicant    ☐ is not medically stable    ☐ requires round-the-clock skilled nursing care

      ☐ is reliant on medical equipment needing another's assistance

☐ Potential applicant's finances do not support admission to an ACF

☐ The ACF does not have any free beds

☐ The ACF does not have any available suitable beds (identify suitability concern): _____
_____

☐ Other: _____

4820-6864-2549.v2

Exhibit I

# The York Group
# Notice of Admission Denial

Applicant's Name: _____

Address: _____

Family member/guardian: _____

Address: _____

Thank you for your interest in [facility name].  Unfortunately, after reviewing your application information, we have determined that we cannot admit you to [facility name].  Below is an explanation of our decision.  If our decision is based on bed availability, you may choose to join a wait list for admission.  Please [describe step needed to join waitlist].

Your application was denied because:

*For applicants to the Assisted Living Program:*

____  You are unable, with direction, to take action sufficient to assure self-preservation in an emergency.

____  We determined that the ALP cannot safely and adequately care for you, even if the services identified as necessary are provided.

____  You are cognitively, physically or medically impaired to a degree which endangers the safety of yourself or other residents.

____  The ALP cannot support your physical, supervisory and psycho-social needs.

*For any applicant:*

____  You require continual medical or nursing care or supervision as provided by facilities licensed pursuant to article 28 of the public health law such as a hospital, nursing home, diagnostic and treatment center.

____  You have a serious and persistent mental disability sufficient to warrant placement in a residential facility licensed pursuant to articles 19, 23, 29, and 31 of the mental hygiene law.

____  You require health or mental health services which are not available or cannot be provided safely and effectively by local service providers.

____  You cause or are likely to cause danger to yourself or others.

____  You have an unstable medical condition which requires continual skilled observation of symptoms and reactions, or accurate recording of such skilled observations for the purposes of reporting to the person's physician.

____  You refuse or are unable to comply with a prescribed treatment program . . . when such failure causes, or is likely to cause, in the judgement of a physician, life-threatening danger to the person or others.

____  You are chronically bedfast and require lifting equipment to transfer or the assistance of 2 persons to transfer.

# The York Group
## Notice of Admission Denial

____ You suffer from a communicable disease or health condition which constitutes a danger to other residents and staff.

____ You are dependent on medical equipment and do not meet all conditions set in 18 NYCRR 487.4(c)(13)(i) through (vi).

____ You engage in alcohol or drug use which results in aggressive or destructive behavior.

____ Other: Specify:_____

Our denial decision is based on the following information from your assessment:

_____

_____

_____

_____

If you have a mobility disability and that mobility disability was related to our decision, we considered the following reasonable accommodations:

_____

_____

_____

But ____ You rejected the offered accommodation.

____ We determined that the accommodation was not reasonable because _____, and that no other accommodation was reasonable and would meet your needs.

____ The Department of Health denied our request for a waiver of regulations that would permit us to admit you.

Completed by: _____      Date: _____

Exhibit J

# The York Group
## [facility name] Termination Log Form

Completed by: _____ Date: _____

Name of Resident: _____ Age/DOB: _____

Mobility device used:  ☐ Cane  ☐ Walker/Rollator  ☐ Manual Wheelchair  ☐ Power Wheelchair

Date of termination of admission agreement: _____

Termination is:  ☐ Voluntary  ☐ Involuntary

Notice of Termination provided to resident:  ☐ Yes  ☐ No

Reason for Termination: _____

_____

_____

Date of most recent UAS: _____

Discharged to:  ☐ Nursing Home  ☐ Hospital  ☐ Living with Family  ☐ Other: _____

4833-0858-3669.v1